[No. 38955.    Department One.    February 9, 1967.]

*In re* RUSSELL

LOWELL D. RUSSELL et al., *Petitioners*, v. CATHOLIC CHARITIES, *Respondent.*\*

*Lauren D. Studebaker, Arnold R. Beezer,* and *Lowell D. Russell,* pro se, for petitioners.

*Patrick A. Geraghty, Jr., Charles O. Carroll,* and *Gary Cunningham,* for respondent.

LANGENBACH, J.†—This is an action to review juvenile court proceedings which made four dependent children available for adoption by permanently depriving their parents of custody. Three of these unfortunate children came

\*Reported in 423 P.2d 640.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

to the juvenile court's attention in June, 1961. At that time they were living with their parents in very unkempt premises and the youngest required medical attention. They were then aged from 6 months up to 2½ years. The marginal conditions under which the children were existing moved the court to make them its wards. The parents were encouraged to visit the children but refused. Later, in November, 1961, they did make such a visit, using it as an opportunity to assault a case worker and forcibly remove the children.

Shortly thereafter, both parents were committed to Northern State Hospital. While there confined the wife gave birth to a fourth girl who was later made a ward of the court. This child was placed with her sisters where she has since remained.

The father was released in August, 1962, as "recovered" but not as cured. It was suggested that he remain on medication in order to continue in an emotionally well-controlled condition. He has declined the medication. The mother was released in January, 1964, as "without psychosis." When the parents were released from the state hospital, it was made a condition of visiting the children that each visit a doctor. This was required to protect the children from further untoward conduct on the part of the parents. The parents refused to meet that condition.

Since their release, the parents have been unable to establish a suitable home for their children. In the meantime a fifth child, a son, was born and lives with them at the present time. At oral argument on this appeal it was admitted that a sixth child, also a son, is now in the family home. The family resides in a small two-bedroom house owned by a relative of the mother. With them also lives the mother's sister who is attending school in Seattle.

The father testified that the main items on the family diet were green soy beans and horsemeat, together with fruits and vegetables when in season at low prices.

The father is a college graduate with considerable ability, who, by reason of his emotional instability has been unable to use that education to any economic advantage. He was

employed at one time as a telephone solicitor for a light bulb company and earned around $100 per month. He has justified his refusal to accept welfare benefits with the argument that a family of the size of his can subsist on less; that $50 a month would be enough to cover any household expenses incurred in caring for himself, his wife and six children. The mother has had secretarial training and experience. The court found her extremely subservient to her husband.

In December, 1964, a hearing was held on a petition to inquire into the further welfare of the four girls. The court, in January, 1965, declared the four children still dependent. In November, 1965, a petition was filed alleging that the parents were incapable, financially and emotionally, of providing the children with an adequate home. This petition sought an order permanently depriving the parents of all rights to the children. Attorneys were appointed as guardians ad litem for each parent, and have, on behalf of the parents, resisted these proceedings. In addition, the father attempted to represent both parents and children as attorney pro se.

A trial was had on this petition on May 9 and 13, 1966. On May 20, the juvenile court made findings of fact and conclusions of law, and entered a judgment. This judgment deprived the parents of all parental rights and placed the four children in the custody of the Catholic Charities of Seattle with power to permit adoption.

The parents and their guardians ad litem were granted a writ of certiorari to review these proceedings. There were eleven assignments of error; seven against certain findings, three against certain conclusions and one against the judgment.

The record is replete with evidence which amply supports the assailed findings: That the parents refused available psychiatric consultation, even when it was tendered at court expense; that the wife is extremely subservient to the husband; that the family lived in inadequate quarters without sufficient income and suitable diet; that the home environment was inadequate; that there was a complete lack of

change in the psychological condition of the parents who have refused to cooperate with authorities; that the children have been separated from their parents since November, 1961, and have no emotional ties with them; and that permanently to deprive the parents of all rights in the children would be in the best interest of those children.

The conclusions attacked were that these are dependent children with no parents able to exercise proper parental control or provide proper care; that their home is an unfit place for the children; and that the children should be placed in the custody of the Catholic Charities of Seattle pending adoption and the parents permanently deprived of them.

RCW 13.04.010 provides in part:

> This chapter shall be known as the "Juvenile Court Law" and shall apply to all minor children under the age of eighteen years who are . . . dependent; and to any person or persons who are responsible for or contribute to, the . . . dependency of such children.

> For the purpose of this chapter the words "dependent child" shall mean any child under the age of eighteen years:

> . . . .

> (2) . . . who has no parent or guardian willing to exercise, or capable of exercising, proper parental control; or

> (3) Whose home by reason of neglect, cruelty or depravity of his parents . . . or for any other reason, is an unfit place for such child; . . . .

The dependency of these children was first established in June, 1961, and reaffirmed in January, 1965. In *In re Three Minors,* 50 Wn.2d 653, 656, 314 P.2d 423 (1957), we said:

> It must . . . be observed that child dependency within the purview of subdivisions (5), [now (2)] [and] (7), [now (3)] . . . of RCW 13.04.010, . . . arises not out of any conduct or misconduct of the child, but upon various named deficiencies of the parent, parents, or guardian in providing for the proper care, maintenance and support of the minor child. Simply stated, child dependency under these subsections of the statute is based primarily upon parental delinquency.

Hence, the same evidence which establishes the delinquency or lack of fitness of the parent, establishes the dependency of the child.

The cold record in this case speaks eloquently of the lack of cooperation of the parents and their manifest inability to control themselves, let alone the lives of these young girls. The impact and persuasiveness of the record with regard to the difficulties under which these unfortunate people suffer was not diminished by their appearance and that of their two infant sons at the time of oral argument. Despite, however, the sympathy which is aroused by the condition of Mr. and Mrs. Russell, "the juvenile court and this court on appeal or certiorari must be guided and must function according to one paramount consideration in all child custody cases: *the welfare of the child.*" *In re Todd v. Superior Court*, 68 Wn.2d 587, 591, 414 P.2d 605 (1966). That is the issue here—the welfare today and thus the lives tomorrow of four small children.

The delicate and troublesome question of a child's custody is much better determined at the trial court (here, the juvenile court) level, where the decision maker has the opportunity to gauge first hand the credibility and character of the parents, the child, and the professional staff workers involved in the case. *In re Todd v. Superior Court, supra*, at 584.

What was said in *In re Three Minors, supra,* is equally applicable here:

The trial court, being mindful that the welfare of the childen [*sic*] here involved was the paramount factor, determined that relator's conduct rendered her unfit for parenthood, and that the children's wellbeing would best be served by permanently removing them from her influence and control and placing them in a position which would, in its opinion, afford them an opportunity for normal development. After considering all the factors involved, we cannot say that the court abused its discretion in so doing.

With respect to the permanency of the order under review, it is significant to note that more than nine months transpired between the time relator's children were removed from her custody and the time of the final

hearing. The court, in entering its conclusions of law and final order, had the benefit of that time lapse in considering whether relator had, during that interval, made any noticeable effort to improve herself or the manner in which she lived. The trial court, in entering its memorandum opinion, was not favorably impressed with her conduct during that period. Nor are we. *In re Three Minors, supra,* at 659.

In the case at bar the time lapse was more than 5 years, and three hearings occurred during which the parents' conduct and ability to bring up these children were appraised and not favorably.

During all these years the little girls have remained within the stable and harmonious conditions of a suitable foster home. A real tie of affection has arisen between the children and their custodians who are, and have been, ready, able and willing to adopt the children and thus permanently secure to them the benefits of that environment.

The natural parents, who now have two small boys in their limited home condition, have demonstrated their inability to rise above an environment which the trial court found on ample evidence to be unfit. Consequently that court, after careful and conscientious consideration of all facets of the case, rightfully determined that the present relationships of these small girls should not be disturbed. Our study of the record convinces us that the trial court was correct and therefore its disposition of this case is affirmed.

ROSELLINI, OTT, and HALE, JJ., concur.

HILL, J., concurs in the result.

---

April 13, 1967. Petition for rehearing denied.