[No. 43400.   En Banc.   February 27, 1975.]

*In the Matter of the Welfare of* CYNTHIA NELL SNYDER. PAUL SNYDER *et al, Petitioners.*

*Richard B. Sanders*, for petitioners.

*Sidney J. Strong,* for respondent Snyder.

*Christopher T. Bayley, Prosecuting Attorney,* and *Ruth A. Nordenbrook, Deputy,* for respondent State.

HUNTER, J.—Paul Snyder and Nell Snyder, petitioners, seek review of the King County Juvenile Court's finding that their daughter, Cynthia Nell Snyder, respondent, was an incorrigible child as defined under RCW 13.04.010(7). The issue before this court is whether the Juvenile Court's determination is supported by substantial evidence.

Cynthia Nell Snyder is 16 years old, attends high school, and has consistently received above average grades. Prior to the occurrences which led to this action, she resided with her parents in their North Seattle home. The record shows that as Cynthia entered her teen years, a hostility began to develop between herself and her parents. This environment within the family home worsened due to a total breakdown in the lines of communication between Cynthia and her parents. Cynthia's parents, being strict disciplinarians, placed numerous limitations on their daughter's activities, such as restricting her choice of friends, and refusing to let her smoke, date, or participate in certain extracurricular activities within the school, all of which caused Cynthia to rebel against their authority. These hostilities culminated in a total collapse of the parent-child relationship. This atmosphere resulted in extreme mental abuse to all parties concerned.

On June 18, 1973, Mr. Snyder, having concluded that the juvenile court might be able to assist him in controlling his daughter, removed Cynthia from the family home and delivered her to the Youth Service Center. As a result, Cynthia was placed in a receiving home. On July 19, 1973, in an attempt to avoid returning home, Cynthia filed a petition in the Juvenile Department of the Superior Court for King County, alleging that she was a dependent child as defined by RCW 13.04.010(2) and (3), which provide:

This chapter shall be known as the "Juvenile Court Law" and shall apply to all minor children under the age of eighteen years who are delinquent or dependent; and to any person or persons who are responsible for or contribute to, the delinquency or dependency of such children.

For the purpose of this chapter the words "dependent child" shall mean any child under the age of eighteen years:

. . .

(2) Who has no parent, guardian or other responsible person; or who has no parent or guardian willing to exercise, or capable of exercising, proper parental control; or

(3) Whose home by reason of neglect, cruelty or depravity of his parents or either of them, or on the part of his guardian, or on the part of the person in whose custody or care he may be, or for any other reason, is an unfit place for such child; . . .

On July 23, 1973, Cynthia was placed in the temporary custody of the Department of Social and Health Services and an attorney was appointed to be her guardian ad litem. On October 12, 1973, the Juvenile Court held that the allegations attacking the fitness of Cynthia's parents were incorrect, at least to the extent that they alleged dependency, and that Cynthia should be returned to the custody of her parents. Cynthia did return to the family residence, where she remained until November 16, 1973. At that time, following additional confrontations in her home, Cynthia went to Youth Advocates, a group which assists troubled juveniles, who in turn directed her to the Youth Service Center. On November 21, 1973, Margaret Rozmyn, who was in charge of the intake program at the center, filed a petition alleging that Cynthia was incorrigible as defined under RCW 13.04.010 (7), which provides:

For the purpose of this chapter the words "dependent child" shall mean any child under the age of eighteen years:

. . .

(7) Who is incorrigible; that is, who is beyond the control and power of his parents, guardian, or custodian by reason of the conduct or nature of said child; . . .

A hearing was held on December 3, 1973, to determine temporary custody. The court limited the proceedings to arguments of opposing counsel and ultimately decided that Cynthia should be placed in a foster home pending the outcome of the fact-finding hearing. This hearing was held on December 10 and 11, 1973. At that time, Commissioner Quinn found that Cynthia was incorrigible and continued the matter for 1 week in order for the entire family to meet with a counselor. Originally, the commissioner indicated that he was inclined to have Cynthia return home, while at the same time being placed under supervised probation. However, on December 18, 1973, Commissioner Quinn, upon hearing the comments and conclusions of the counseling psychiatrist chosen by the parents, decided that Cynthia was to be placed in a foster home, under the supervision of the probation department of the Juvenile Court, and that she and her parents were to continue counseling, subject to subsequent review by the court. The parents immediately filed a motion for revision of the commissioner's decision, which was denied by the Superior Court for King County in August of 1974.

This court assumed jurisdiction of the case upon our issuance of the requested writ of certiorari.

The sole issue presented by these facts is whether there is substantial evidence in the record, taken as a whole, to support the Juvenile Court's determination that Cynthia Nell Snyder is incorrigible. Her parents contend that Cynthia is not incorrigible, as a matter of law, since the only evidence to support such a finding is their daughter's own statements. We disagree.

A child is incorrigible when she is beyond the power and control of her parents by reason of her own conduct. RCW 13.04.010(7). In reviewing the record in search of substantial evidence, we must find "evidence in sufficient quantum to persuade a fair-minded, rational per-

son of the truth of a declared premise." *Helman v. Sacred Heart Hosp.*, 62 Wn.2d 136, 147, 381 P.2d 605, 96 A.L.R.2d 1193 (1963). In applying this criteria for review, we are mindful that our paramount consideration, irrespective of the natural emotions in cases of this nature, must be the welfare of the child. *In re Todd*, 68 Wn.2d 587, 414 P.2d 605 (1966); *In re Russell*, 70 Wn.2d 451, 423 P.2d 640 (1967). When the questions of dependency and incorrigibility arise, "we have often noted what we think is a realistic and rational appellate policy of placing *very strong* reliance on trial court determinations of what course of action will be in the best interests of the child." *In re Todd, supra* at 591. In reviewing the record, we find no evidence which would indicate that Commissioner Quinn acted unfairly, irrationally, or in a prejudicial manner in reaching his conclusion. Therefore, we must give "very strong" credence to his determinations. We feel it is imperative to recognize that the issue of who is actually responsible for the breakdown in the parent-child relationship is irrelevant to our disposition of this case. The issue is whether there is substantial evidence to support a finding that the parent-child relationship has dissipated to the point where parental control is lost and, therefore, Cynthia is incorrigible. It is for this reason that Cynthia's conduct, her state of mind, and the opinion of Doctor Gallagher, the psychiatrist chosen by Mr. and Mrs. Snyder, are of such paramount importance. This child has established a pattern of refusing to obey her parents and, on two occasions, has, in effect, fled her home by filing petitions in the Juvenile Court in order that she might be made a ward of the court. Cynthia's adamant state of mind can be best understood by considering her *clear* and *unambiguous* testimony in response to her attorney's direct examination.

Q. Your petition alleges that you absolutely refuse to go home and obey your parents, is that correct? A. Yes.
Q. You are under oath today, of course, and is that the statement you would make to the Court today? A. Yes.
Q. Cindy, do you understand the consequences of filing a

petition of this nature? A. Yes. Q. Did we discuss this matter? A. Yes. Q. Have we discussed this on several occasions? A. Yes. Q. What is your understanding of what might be the consequences of this type of petition? A. I could be put in the Youth Center or I could be put into another institution of some kind or I could go into the custody of the Department of Social and Health Services. Q. So you understand it is conceivable that you might not be able to go back home even if you want to go back home, is that correct? A. Yes. Q. In spite of all that, is it still your statement today that at the time of the petition anyway you refused to go back home? A. Yes. Q. Is that your position right now? A. Yes. Q. The position then, why don't you state that for the Court? A. I refuse to go back there. I just won't do it. MR. SANDERS [Attorney for parents]: I object to the whole line of testimony. I think it is irrelevant whether she refuses to go back home. That is not an issue in the case. THE COURT: Overruled. A. *I just absolutely refuse to go back there. I can't live with them.*

(Italics ours.)

In addition, the parents and the older sister, by their testimony, admitted that a difficult situation existed in the home. The court also considered the testimony of the intake officer from the Youth Service Center as to the attitude of Cynthia. Finally, the court considered the opinion of Dr. Gallagher, who met with Cynthia and her parents, and reported that counseling would not be beneficial until all of the individuals concerned backed away from the hard and fast positions they now held in regard to this matter which, in his opinion, was the cause of the tension which resulted in overt hostility. In other words, the finding of incorrigibility is not supported solely by Cynthia's testimony and her refusal to return home. But in addition thereto, the commissioner's opinion finds support in the testimony of other individuals who were familiar with the situation, either from a personal or a professional standpoint. The fact that the commissioner gave serious consideration to the testimony of Cynthia, an interested party, is inconsequential since it only goes to the weight to be given to her

statements as a witness. Furthermore, we have not deviated from the rule that when an interested party testifies, the rate at which that evidence is discounted, if a all, should be determined by the trial judge, who is far better qualified to make that judgment than we. *Hanford v. Goehry*, 24 Wn.2d 859, 167 P.2d 678 (1946).

■ Having found the juvenile court's finding of incorrigibility, as defined in RCW 13.04.010(7), to be supported by substantial evidence within the entire record, we are constitutionally bound to affirm the Juvenile Court's decision. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

The parents also contend that RCW 13.04.010(7), is unconstitutionally vague. Our recent upholding of this statute in *Blondheim v. State*, 84 Wn.2d 874, 529 P.2d 1096 (1974), is dispositive of this issue and no further discussion is warranted.

It is implicit in the record that the petitioner parents believe the Juvenile Court has given sympathy and support to Cynthia's problems in disregard of their rights as parents, and that the Juvenile Court has failed to assume its responsibility to assist in the resolution of the parents' problems with their minor child. We find this presumption of the petitioners to be unsupported by the evidence.

The record clearly shows that numerous attempts were made by the Juvenile Court commissioner to reconcile the family differences, as evidenced by its unsuccessful attempt at sending Cynthia home subsequent to the disposition of the first petition, the attempt to gain assistance through professional counseling, and the numerous and extensive exchanges between Commissioner Quinn and the Snyder family during the proceeding. The avenues for counseling were to remain open and counseling of both parties was to continue, which was interrupted by the interposition of the application by the parents for our review. In view of our disposition of this case, we are satisfied that the Juvenile Court, in exercising its continuing jurisdiction, will con-

tinue to review the progress of the parties to the end of a hoped-for reconciliation.

The decision of the Juvenile Court for King County is affirmed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

Petition for rehearing denied April 3, 1975.