[No. 3155–3.   Division Three.   October 4, 1979.]

*In the Matter of the Welfare of* MARGARET DALE BENNETT, ET AL.

*Jeffrey H. Hartje,* for appellant.

*Slade Gorton, Attorney General,* and *Peter J. Bezek, Assistant,* for respondent.

ROE, J.—James and Margaret Bennett were married in 1973 at age 16. The couple had two children before the marriage was dissolved in 1977: Edward, Jr., born in 1974, and Margaret Dale, born in 1975. In August 1975, Edward, Jr., was taken to Fairchild Air Force Base Hospital because he had been severely beaten. The examining physician filed a child abuse complaint with the Child Protective Services in Spokane. Two months later Margaret beat Edward, Jr., to death. On January 15, 1976, she pleaded guilty to manslaughter and was placed on probation for 3 years.

In September 1976, on a petition initiated by Margaret's probation officer, Margaret Dale was adjudicated a dependent child and placed in temporary foster care due to Margaret's inability to cope with stress and her fear for the physical safety of the child. Following the dependency

hearing, both James[1] and Margaret received psychiatric counseling. James was diagnosed a passive–aggressive personality with sociopathic traits: expert testimony at the subsequent deprivation proceedings described James as immature, strongly egocentric with limited patience for tolerating frustration, and lacking in the necessary parenting skills, commitment and emotional sensitivity to adequately raise Margaret Dale.

By the time of the instant hearing, James had remarried. His new wife, Julie, had three children, by a previous marriage, who were awarded to their father; and she had been the subject of a child abuse complaint filed against her.

In April 1978, the Office of the Attorney General filed a petition for permanent deprivation. Following a hearing, the trial court held that clear, cogent and convincing evidence established that the best interests of Margaret Dale required permanent deprivation of all parental rights. An order was entered permanently depriving James and Margaret Bennett of the custody, care and control of Margaret Dale. James appeals that order; Margaret does not.

James challenges the conclusion of law that he is incapable of providing proper parental care and supervision of his minor daughter; however, he did not challenge any of the 80 findings of fact. If no error is assigned to the findings of fact, they become the established facts of the case. *State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 586 P.2d 870 (1978).

RAP 10.3(g) requires in pertinent part:

A separate assignment of error for each finding of fact a party contends was improperly made or refused must be included with reference to the finding or proposed finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

---

[1] Due to the number of parties involved with the last name "Bennett," first names will be used to avoid confusion.

James, however, argues that RAP 1.2(a) provides for liberal interpretation of the rules to promote justice. He also cites *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 710, 592 P.2d 631 (1979), for the proposition that a

> technical violation of the rules will not ordinarily bar appellate review, where justice is to be served by such review. In these circumstances, where the nature of the challenge is perfectly clear, and the challenged finding is set forth in the appellate brief, [the appellate court] will consider the merits of the challenge.

*Daughtry* is inapposite: there, Jet Aeration set forth the challenged finding in the text of its argument on the issue. Here, James only assigned error to conclusions of law Nos. 3 and 4, and did not specifically refer to or set forth any findings of fact in his 36-page brief. Consequently, our function is limited to determining whether the findings of fact support the trial court's conclusions of law and judgment. *Hoke v. Stevens–Norton, Inc.*, 60 Wn.2d 775, 375 P.2d 743 (1962); *J.D. English Steel Co. v. Tacoma School Dist. 10*, 57 Wn.2d 502, 358 P.2d 319 (1961).

██ Permanent deprivation of all parental rights should not be lightly undertaken. Although the trial court is accorded wide discretion in deprivation proceedings, *In re Tarango*, 23 Wn. App. 126, 595 P.2d 552 (1979), an order which severs the natural parent–child relationship must be based on clear, cogent and convincing evidence. *In re Sego*, 82 Wn.2d 736, 513 P.2d 831 (1973). Stated differently, the evidence must support the "highly probable" conclusion that the child's welfare will be substantially served by permanent deprivation. The focal point is the welfare of the child.

> Parental interest in the custody and control of minor children is of the utmost importance but the primary concern on review is the welfare of the child. . . . Each case must be determined on its own facts, . . . however, when the rights of parents are in conflict with the welfare of the child, the child's welfare must prevail.

(Citations omitted.) *In re Yetter*, 22 Wn. App. 304, 306–07, 589 P.2d 815 (1979). *See In re Schulz*, 17 Wn. App. 134,

561 P.2d 1122 (1977), for an excellent summary of basic principles to be considered in deprivation proceedings.

Child dependency pursuant to RCW 13.34.030 *et seq.* arises out of parental delinquency in providing proper care, maintenance and support for the child. *In re Russell,* 70 Wn.2d 451, 423 P.2d 640, *cert denied,* 389 U.S. 874 (1967). The trial court may review and investigate the entire record of parenthood, *In re Ross,* 45 Wn.2d 654, 277 P.2d 335 (1954), and specifically may consider a parent's failure to rehabilitate after an adequate time. *In re Kier,* 21 Wn. App. 836, 587 P.2d 592 (1978).

With respect to James, the unchallenged findings reveal the following: (1) James had physically abused both Margaret, his wife, and Edward, Jr.; (2) the court adopted the psychiatric evaluation of James as a passive–aggressive personality and a sociopath; (3) James has no insight into or understanding of Margaret Dale's needs and lacks parental skills and resources; (4) James reluctantly cooperated with both psychiatric counseling and DSHS attempts to improve his parenting skills; (5) Julie Bennett admitted having severely punished her own children and was the subject of a child abuse complaint; (6) there is a significant danger that James will vent his aggressions on Margaret Dale through Julie Bennett; and (7) James Bennett is incapable of providing proper parental care and supervision.

These findings support the trial court's conclusion that Margaret Dale's best interests require termination of James' parental rights under the "highly probable" test of *In re Sego, supra.*

■ James also argues that the trial court erred in admitting the opinion testimony of Drs. Moyer, Gipstein and Rennebohm, as it was speculative in nature and it was hearsay. During trial, James failed to object on hearsay grounds to the testimony of Drs. Gipstein and Rennebohm. To preserve error for consideration on appeal, the alleged error must be called to the trial court's attention to afford an opportunity for correction. *State v. Wicke,* 91 Wn.2d 638, 591 P.2d 452 (1979). Therefore, any challenge on this

ground to the testimony of these two doctors has been waived.

Dr. Moyer, a psychiatric social worker for the Air Force, counseled James on two or three occasions. He prepared a psychological assessment of James based on these counseling sessions but was influenced in part by the files of Drs. Rennebohm and Mayes, which he had read. At the deprivation hearing, James objected to Dr. Moyer's opinion testimony on hearsay grounds. The court overruled the objection, stating:

> No. No, I'll overrule the objection. The answer is in his field, his assessment is in his field of training and he can give an assessment and in cases of expert testimony, all doctors testify on the basis of what they hear from the radiologist, or somebody else and use those in reaching their own assessment and he is able to testify even though it's based in part on other people's assessments.

Rule 703 of the Washington Rules of Evidence (ER) provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

*See* Annot., *Admissibility on Issue of Sanity of Expert Opinion Based Partly on Medical, Psychological, or Hospital Reports,* 55 A.L.R.3d 551 (1974).

The comment to ER 703 states, in pertinent part:

> The expert will ordinarily be in the best position to know what data can be reasonably relied upon, and the court will usually follow the expert's advice on the point. The court's decision will, to a large extent, be based on the degree of confidence it has in the professional calibre and ethics of the expert group involved. Physicians are likely to be given more leeway than accidentologists. *Id.*

Several older Washington cases suggest that the opinion of an expert based solely upon hearsay reports or other hearsay is inadmissible. Meisenholder § 357. . . .

Rule 703 reflects the approach taken in the more recent cases.

Although the deprivation hearing in this case occurred before the above rule became effective (on April 2, 1979), the error, if any, in receiving the evidence was harmless. If we ordered retrial, the proceedings would be governed by the new rules of evidence and, under rule 703, Dr. Moyer could give the same testimony.

James also objected to the testimony of Drs. Gipstein and Rennebohm, claiming it was "speculative" as neither doctor had observed James for a sufficient amount of time to formulate a reliable evaluation.

The admission of expert testimony is within the discretion of the trial court whose ruling must stand absent an abuse of that discretion. *Crowe v. Prinzing,* 77 Wn.2d 895, 468 P.2d 450 (1970). The trial court's decision to allow expert testimony is given particular deference when there are fair arguments to be made both for and against its admission. *Weber v. Biddle,* 72 Wn.2d 22, 431 P.2d 705 (1967).

As James did not challenge either doctor's basic qualifications as an expert, any deficiencies in their qualifications to testify in this case affect only the weight of the evidence, not its admissibility. *Larson v. Georgia Pac. Corp.,* 11 Wn. App. 557, 524 P.2d 251 (1974); *Palmer v. Massey–Ferguson, Inc.,* 3 Wn. App. 508, 476 P.2d 713 (1970).

We have reviewed the other assignments of error and do not find them persuasive.

Affirmed.

GREEN, C.J., and McINTURFF, J., concur.