[Nos. 55875-7-I; 55970-2-I.   Division One.   July 3, 2006.]

NETVERSANT WIRELESS SYSTEMS, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.

---

814

*Robert M. McKenna, Attorney General,* and *Beth A. Bielefield, Assistant,* for appellant.

*Aaron K. Owada* (of *Northcraft, Bigby & Owada, P.C.*), for respondent.

¶1 AGID, J. — The Washington State Department of Labor & Industries (L&I) cited Netversant Wireless Systems for two serious Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, violations of worker-safety asbestos regulations for work performed at the Providence Campus of Swedish Medical Center, Building 1910. Netversant worked there from January 21, 2002 through March 29, 2002, installing cable throughout the building. Both L&I and Netversant appeal the decision of the King County Superior Court, which generally affirmed L&I. Netversant argues the citation was improper because its scope was limited to its employees' activities in a specific location on March 27, a location that did not contain asbestos containing materials (ACM) or presumed asbestos containing materials (PACM). L&I appeals the superior court's decision to reverse the citation for activities on March 27, 2002. We hold that in light of the dangers posed by asbestos exposure and the liberal construction we give to WISHA regulations, L&I properly cited Netversant for its failure to inform its employees of the presence and location of ACM and PACM and to provide them with asbestos training. Because employees worked throughout Building 1910 over a two month period and ACM and PACM were located on several floors, L&I correctly did not limit the citation to the date and place of the L&I inspection. We affirm the superior court's decision upholding the citation as well as its ruling that two findings of fact were not supported by substantial evidence. We

reverse the court's decision to reverse the citation for activities on March 27, 2002.

## FACTS

¶2 Swedish Medical Center hired Netversant to provide new communication cable throughout Building 1910 of its Providence campus. It worked in the building from January 21, 2002 through March 29, 2002.[1] Before it began the job, Pete Barnstein, Netversant's project manager, met with Lee Allen Brei, Swedish Medical Center's facilities director. He and Brei inspected Building 1910, identifying the locations of ACM. Brei gave him documents establishing that ACM was located on the fourth, fifth, and sixth floors. Netversant kept testing results for the building in a three-ring binder in the gang box at the job site, and field supervisor James Clark knew about the ACM and test results. Brei told Netversant before it started work that there was no ACM in the hall on the first floor where the employees would be working on March 27, 2002 but that they would encounter PACM 30 feet down the hallway.

*March 27, 2002*

¶3 On March 27, 2002, Netversant employees Julie Dana, James Clark, and Jesse Kelly worked on the first floor of Building 1910 looking for a location for a communication cable above a false ceiling. James Clark testified that he worked for Netversant at Building 1910 from January 21 through March 29, 2002, as a field supervisor. He said that before he worked on Building 1910, Netversant did not tell him about possible PACM or provide him with asbestos training during the year before the March 27 work at Building 1910. Julie Dana also testified that no one told her about PACM at Building 1910 and she never received asbestos training from Netversant during her employment from May 10, 2000 through May 30, 2003.

---

[1] Testimony of field supervisor James Clark.

¶4 Jesse Kelly testified he worked with Dana and Clark on cable installation on all floors of Building 1910. On March 27, 2002, he worked with Dana and Clark on the first floor to locate areas to lay communications cables. He said Netversant never told him about PACM and his only asbestos awareness training was on April 30, 2002, after they completed the work on Building 1910. Both he and Dana testified they did not drill into the walls, ceilings, or vinyl floors or do any kind of work where he would have come into contact with pipe insulation.

*Inspection and Citation*

¶5 From May 9, 2002 through May 24, 2002, L&I Safety and Health Inspector Michelle Czejka inspected the Netversant worksite at Building 1910 in response to complaints from Netversant employees who said they were working with and around asbestos materials on March 27, 2002.[2] On July 15, 2002, L&I cited Netversant for three serious WISHA violations:

*Citation 1 Item 1*:

. . . .

Management did not ensure that employees were informed of the presence and location of presumed asbestos containing material (PACM) and asbestos containing material (ACM) at Providence Medical Center 1910 Building prior to the commencement of work[;][3]

---

[2] As part of this inspection, Czejka met with Netversant executives Andrew Boyd (chief financial officer) and Mike Emery (vice president—operations) to explain the purpose of her inspection.

[3] Under WAC 296-62-07721(1)(c)(i) and 296-62-07721(2)(c)(ii)(B), all industries covered by WISHA and chapter 49.26 RCW must provide the following:

(1) Communication of hazards to employees. General industry requirements.

. . . .

(c) Duties of employers and building and facility owners.

(i) Building and facility owners must determine the presence, location, and quantity of ACM and/or PACM at the worksite. Employers and building and facility owners must exercise due diligence in complying with these requirements to inform employers and employees about the presence and location of ACM and PACM.

*Citation 1 Item 2*:

. . . .

Management did not ensure that in cases where asbestos worker certification did not apply, all employees were trained according to WAC 296-62-07722(5) of this subsection regardless of their exposure levels. Employees who worked in areas containing asbestos containing materials and presumed asbestos containing materials in the Providence Medical Center 1910 Building were not provided with adequate training[;][4]

*Citation 1 Item 3*:

. . . .

Management did not ensure that the company accident prevention program was tailored to the needs of the operations in that it did not include a section on potential asbestos exposure and asbestos awareness training.[5]

¶6 The citation imposed a total penalty of $2,500 for these three violations. Netversant appealed the citation. On July 24, 2002, L&I reassumed jurisdiction[6] and issued a corrective notice of redetermination (CNR) that deleted item 3 from the citation.

---

WAC 296-62-07721(1)(c)(i).

(c) Duties of employers whose employees perform work subject to this standard in or adjacent to areas containing ACM and PACM. Building/vessel and facility owner or owner's agents whose employees perform such work must comply with these provisions to the extent applicable.

. . . .

(ii) Before work under this standard is performed employers of employees who will perform such work must inform the following persons of the location and quantity of ACM and/or PACM present at the worksite and the precautions to be taken to insure that airborne asbestos is confined to the area.

. . . .

(B) Employees who will perform such work and employers of employees who work and/or will be working in adjacent areas.
WAC 296-62-07721(2)(c)(ii)(B).

[4] "In cases where certification requirements of chapter 296-65 WAC [applying to asbestos removal and encapsulation] do not apply, all employees must be trained according to the provisions of this section regardless of their exposure levels." WAC 296-62-07722(1)(c).

[5] Citation 1 Item 3 charges a violation of WAC 296-800-14005.

[6] RCW 49.17.140(3).

¶7 On September 6, 2002, Netversant filed an appeal from the CNR with the Board of Industrial Insurance Appeals (Board). At the hearing, Inspector Czejka testified that during her inspection she saw damaged ceiling tiles with exposed insulated pipe above the area on the first floor of Building 1910 near the security office and gift shop.[7] She conducted tests on several of these ceiling panels but did not find ACM. She also spoke to employees and found no documentary evidence that Netversant employees received training to work with and around asbestos materials.

¶8 On October 31, 2003, an industrial appeals judge issued a proposed decision and order (PD&O) affirming the CNR. The PD&O contained the following findings of fact:

(4) The employer, Netversant Wireless, was contracted to provide new communication cable throughout the building to improve the systems of the building.

. . . .

(6) Netversant employees worked on the first floor of Building 1910, where they worked in a hallway near the security office and gift shop. Netversant employees were looking for thoroughfares for cable to be installed. In doing so, Netversant employees had to pop open a "false" ceiling of popcorn tiles that was situated three feet below that of the actual ceiling.

(7) At the time of the work performed on the first floor, Netversant employees saw a broken-off part of the actual ceiling that they believed might contain asbestos materials.

(8) The broken-off part of the actual ceiling was tested in a laboratory, and was not found to contain any asbestos containing materials (ACM).

(9) Other parts of the 1910 Building were tested for ACM and presumed asbestos containing materials (PACM), with the results indicating that ACM was found on floors above the first floor.

---

[7] During her inspection, she learned that Building 1910 was built before 1980, which is when the use of asbestos began being highly regulated.

(10) The employer failed to communicate to its employees who worked in May 2002 [sic] at the 1910 Building, the presence and location of ACM and PACM in the 1910 Building at the Providence Campus of the Swedish Medical Center.

(11) The employer failed to provide asbestos training to all of its employees who worked in May 2002 [sic] at Building 1910 at the Providence Campus of the Swedish Medical Center.

¶9 On December 24, 2003, Netversant filed a petition for review from the October 31, 2003 PD&O. On January 12, 2004, the Board denied Netversant's petition for review, making the PD&O the final order of the Board.[8] Netversant appealed the Board's decision to the King County Superior Court.

¶10 On February 11, 2005, the superior court upheld Board findings of fact 1 through 9, but concluded that findings of fact 10 and 11 were not supported by substantial evidence.[9] The court affirmed L&I's citations for all dates that Netversant worked at Building 1910, except March 27, 2002. It remanded the matter to the Board to enter specific findings identifying the date(s) on which it found Netversant violated WAC 296-62-07721(1)(c)(i) by not informing its employees of the presence and location of ACM or PACM at Building 1910, and WAC 296-62-07722(1)(c) by not providing asbestos awareness training to its employees performing work at Building 1910.

## DISCUSSION

¶11 When reviewing an administrative decision, courts act in a limited appellate capacity.[10] Under RCW 34-.05.570(3), we reverse an administrative decision only if

---

[8] RCW 51.52.104.

[9] It appears the Board conflated the dates of the May 2002 inspection with the dates Netversant worked in the building, which ended sometime around March 29, 2002.

[10] *Mader v. Health Care Auth.*, 149 Wn.2d 458, 468, 70 P.3d 931 (2003) (citing *Union Bay Pres. Coal. v. Cosmos Dev. & Admin. Corp.*, 127 Wn.2d 614, 617, 902 P.2d 1247 (1995)).

it (1) was based on an error of law, (2) is not supported by substantial evidence, or (3) is arbitrary or capricious.[11] Agency action is arbitrary or capricious if it is willful and unreasoning and without regard to the facts or circumstances.[12] Appellate courts apply these standards directly to the administrative agency's decision.[13] We review Board findings of fact for substantial evidence and must determine whether those findings support its conclusions of law.[14] Substantial evidence is evidence which would persuade a fair-minded, rational person of the truth of the finding.[15]

¶12 The legislature enacted WISHA regulations to insure the industrial safety and health of Washington workers.[16] WISHA requires that all employers furnish a workplace free of recognized hazards[17] and authorizes L&I to cite any employers who fail to do so.[18] We construe the statute liberally to carry out its purpose.[19]

---

[11] *William Dickson Co. v. Puget Sound Air Pollution Control Agency*, 81 Wn. App. 403, 407, 914 P.2d 750 (1996) (citing *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993)).

[12] *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 149 Wn.2d 17, 26, 65 P.3d 319 (2003) (citing *Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 501, 39 P.3d 961 (2002)).

[13] *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 914, 83 P.3d 1012, *review denied*, 152 Wn.2d 1003 (2004).

[14] RCW 49.17.150; *Martinez Melgoza & Assocs. v. Dep't of Labor & Indus.*, 125 Wn. App. 843, 847, 106 P.3d 776 (citing *Danzer v. Dep't of Labor & Indus.*, 104 Wn. App. 307, 319, 16 P.3d 35 (2000)), *review denied*, 155 Wn.2d 1015 (2005).

[15] *Martinez*, 125 Wn. App. at 848 (citing *In re Welfare of Snyder*, 85 Wn.2d 182, 185-86, 532 P.2d 278 (1975)); *Pilcher v. Dep't of Revenue*, 112 Wn. App. 428, 435, 49 P.3d 947 (2002), *review denied*, 149 Wn.2d 1004 (2003).

[16] RCW 49.17.010.

[17] RCW 49.17.060.

[18] RCW 49.17.120(1).

[19] *Inland Foundry Co. v. Dep't of Labor & Indus.*, 106 Wn. App. 333, 336, 24 P.3d 424 (2001).

## I. *Scope of the Citations*

¶13 Netversant asserts the citation was limited to its activities on March 27, 2002, which involved only raising ceiling tiles in an area on the first floor of Building 1910 that did not contain either ACM or PACM. It contends that L&I did not present substantial evidence that Netversant violated WAC 296-62-07721(1)(c) or -07722(4)(c) because it did not prove that there was ACM or PACM present at the first floor location where its workers were lifting ceiling tiles on March 27. It argues that it was not required to disclose the location of ACM or PACM in other parts of the building because no one was working on those floors on March 27. It contends that requiring an employer or building owner to disclose all places where asbestos has been located is overbroad and burdensome if an employee will not work in those areas.

¶14 L&I asserts the citation was not limited to Netversant's first floor activities on March 27. Rather, it issued the citation because Netversant worked throughout Building 1910, which contained both ACM and PACM, from January 21 through March 29.

¶15 Substantial evidence supports the Board's findings that Netversant's work in Building 1910 was not limited to a particular date or location in the building. James Clark testified he worked at Building 1910 from January 21 through March 29, and Jesse Kelly testified that he worked on all floors of Building 1910 while employed by Netversant. Further, Netversant does not challenge finding of fact 4, which states, "[t]he employer, Netversant Wireless, was contracted to provide new communication cable throughout the building to improve the systems of the building." Unchallenged findings of fact are considered verities on appeal.[20] An employee's complaint about incidents occurring on a particular date or in a particular place may prompt an investigation, but it does not limit the scope of L&I's authority to investigate all

---

[20] *State v. Rankin*, 151 Wn.2d 689, 709, 92 P.3d 202 (2004) (citing *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994)).

matters related to worker safety once it begins an investigation. While Inspector Czejka did state in her deposition that the scope of her inspection was for the activities taking place on March 27, nothing in the citation indicates that its scope is limited to that date or to any specific place on the first floor. The citation itself was broad enough to encompass work on other floors and at other times during which Netversant employees worked in Building 1910.

## II. *Substantial Evidence*

¶16 Substantial evidence supported the Board's findings that Netversant's work in Building 1910 was not limited to a single date and place in the building. According to Brei, PACM was located 30 feet from where Netversant employees worked on the first floor and ACM was present on floors above the first floor. Both James Clark and Jesse Kelly worked on the whole project on all floors of Building 1910 while they were employed by Netversant. Both men also testified that they did not receive any information about the presence and location of ACM or PACM from Netversant while working in Building 1910. Julie Dana also testified that she was never informed of PACM at Building 1910.

¶17 Employers are required to communicate asbestos hazards to their employees.[21] WAC 296-62-07721 applies to employees who perform work in places adjacent to areas containing ACM and PACM. Netversant's argument that the regulations apply only to a specific time and place is not persuasive, particularly in light of the purpose of Washington's asbestos legislation.[22] Netversant does not cite any legal authority to support its assertion that L&I

---

[21] WAC 296-62-07721(1)(c)(i).

[22] "Air-borne asbestos dust and particles . . . are known to produce irreversible lung damage and bronchogenic carcinoma. One American of every four dying in urban areas of the United States has asbestos particles or dust in his lungs. The nature of this problem is such as to constitute a hazard to the public health and safety, and should be brought under appropriate regulation." RCW 49.26.010.

citations are so limited.[23] In addition, its argument is contrary to the requirement that we construe WISHA liberally.[24] There is no case law defining "work site" for the purpose of this regulation, but under the rules of statutory construction, we interpret it in light of the statute as a whole, the purpose of WISHA, and the pervasive danger of asbestos particles.[25] We hold that "work site" in this context includes those portions of a site where employees work in which they could reasonably expect to encounter airborne asbestos particles. Given the nature of Netversant's job at Building 1910, this includes the entire building. The Board correctly upheld item 1 of the L&I citation. The uncontroverted evidence establishes Netversant failed to inform its employees of the presence and location of ACM and PACM. The plain language of WAC 296-62-07721(1)(c) imposes a duty upon employers and building owners to do so when there is a reasonable possibility employees will encounter ACM and PACM in the course in their work. Netversant was locating cable throughout the building from January 21 through March 29, 2002, and ACM and PACM were present in some parts of the building. Netversant was therefore required to notify its employees under WAC 296-62-07721(1)(c)(i) of this problem.

III. *Duty To Train Class IV Asbestos Workers*

¶18 Netversant argues that the Board erred because there was no evidence that ACM or PACM was found in the specific locations where Netversant employees worked. We have already rejected that argument for purposes of the notification regulation. For the same reasons, we hold Netversant's narrow interpretation is not persuasive here.

---

[23] *See State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) (a court will not review an issue raised in passing or unsupported by authority); RAP 10.3(a)(5).

[24] *Inland Foundry*, 106 Wn. App. at 336.

[25] *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002).

¶19 Employers have a duty to provide training to employees involved in asbestos projects "prior to or at the time of initial assignment, unless the employee has received equivalent training within the previous twelve months . . . ."[26] WAC 296-62-07722(6) requires that employers provide "an asbestos awareness training course to all employees who are or will work in areas where ACM and/or PACM is present who work in buildings containing asbestos-containing materials . . . ."[27] Building 1910 is such a building.

¶20 The Board correctly upheld L&I's citation for Netversant's failure to provide asbestos training to employees working at Building 1910. As with the citation for failing to inform its employees of the asbestos hazards in Building 1910, nothing in item 2 of the citation limits its scope to March 27. Rather it covers the entire time during which Netversant employees worked in the building. As we noted above, neither James Clark nor Jesse Kelly received asbestos awareness training until April 30, 2002, after the work on Building 1910 was complete, and Julie Dana never received asbestos training at any time during the course of her two year employment with Netversant.

¶21 Employers like Netversant must inform employees of the presence and location of ACM and PACM and provide basic training to people who work in buildings containing ACM or PACM.[28] Netversant's argument that training programs should be required only where there is ACM or PACM in specific work areas ignores the language of regulation. Given the seriousness of the hazard that asbestos poses, particularly to those unaware of its presence, we affirm the Board's decision that Netversant violated WAC 296-62-07722(4)(c)(i).

---

[26] WAC 296-62-07722(2).

[27] Contrary to Netversant's assertion, WAC 296-62-07722(6) does not apply solely to workers performing housekeeping duties. Rather, the section singles those workers out as ones who must be provided with asbestos training at no cost.

[28] "Employers must provide at least two hours of training . . . ." WAC 296-62-07722(4)(c)(i).

¶22 We also affirm the trial court's ruling that findings of fact 10 and 11 were not supported by substantial evidence. There was no evidence that Netversant worked in Building 1910 after April 30, 2002, so there could be no violations at that time. The trial court properly remanded the case to the Board to determine when Netversant violated WAC 296-62--07721(1)(c)(i) and WAC 296-26-07722(4)(c)(i).

¶23 The trial court reversed the citation for March 27 for lack of evidence of a violation on that date. We have held that the obligation to notify and train workers on sites where ACM or PACM may be found applies when those workers could reasonably expect to encounter airborne asbestos particles. While the record here is not a model of clarity, it supports the conclusion that PACM was located 30 feet from where Netversant workers were that day. It also establishes that there were ACM and PACM present at several locations in the building where various employees worked throughout the installation process. We therefore hold that the obligation to notify and train applied throughout the job, including March 27, 2002, and reverse the trial court's ruling to the contrary.

¶24 We affirm the Board's rulings that Netversant violated WAC regulations requiring notification of and training for the presence of ACM and PACM in Building 1910. We remand to the Board to clarify the dates on which it ruled that Netversant committed those violations.

GROSSE and ELLINGTON, JJ., concur.