# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of A.G.H. (dob: 09/22/2017), | No. 79992-4-I |
| Minor Child, | |
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JIMYCO JA-RAY GREENE, | |
| Appellant. | FILED: January 21, 2020 |

ANDRUS, J. — Jimyco Greene appeals the order terminating his parental rights to A.H. He contends the trial court erred in finding that the Department of Social and Health Services (Department)[1] offered or provided him all court-ordered and necessary services. He also contends that because such services were not offered, the court erred by prematurely finding that termination was in A.H.'s best interests. We affirm.

---

[1] Effective July 1, 2018, the newly created Department of Children, Youth, and Families (DCYF) took over child welfare duties that were formerly the responsibility of the Department of Social and Health Services (DSHS). RCW 43.216.906. This opinion references the "Department" to mean DSHS before July 1, 2018, and DCYF after July 1, 2018.

FACTS

In September 2017, A.H., who was then several days old, was removed from the mother's custody after A.H. tested positive for methadone at birth.[2] Jimyco,[3] A.H.'s father, was incarcerated at the time. A.H. has never been in the care of either parent.

The Department filed a dependency petition on September 29, 2017. An agreed order of dependency and a dispositional order as to Jimyco were entered on December 1, 2017. Jimyco agreed that he was unable to adequately care for A.H. Among other things, the trial court ordered Jimyco to undergo a psychological evaluation with a parenting component, obtain a drug and alcohol evaluation and follow treatment recommendations, and participate in an evidence-based parenting program.

Over the following year, Sharon Cortez, the Department social worker assigned to A.H.'s case, contacted Jimyco repeatedly regarding the court-ordered services. On December 1, 2017, Cortez suggested Dr. Steve Tutty perform an in-custody psychological evaluation of Jimyco at the King County Jail, but Jimyco did not agree to this evaluator.[4] Jimyco indicated he "would rather wait" until released from custody to use a different evaluator. While in custody at the Washington Corrections Center in Shelton,[5] Jimyco agreed to use Dr. Marnee Milner for the evaluation after his release. Although Cortez inquired

---

[2] The mother's parental rights were terminated in January 2019 and are not at issue in this appeal.

[3] For clarity, we refer to the father by his first name and mean no disrespect.

[4] The dispositional order required that the psychological evaluation be performed by "a mutually agreed upon evaluator."

[5] At some point in December 2017, Jimyco was transferred from the King County Jail to the Washington Corrections Center.

about other in-custody services, no court-ordered services were available to Jimyco at the Washington Corrections Center.

When Jimyco was released from custody in February 2018,[6] Cortez met him in Shelton and transported him back to King County. Cortez took Jimyco to shop for clothing and food and to obtain a Washington State identification card, and provided him bus tickets and a prepaid cellular phone to facilitate communications and accessing services. During these car rides, Cortez and Jimyco discussed the ordered services that he needed to complete. They agreed to meet a few days later to coordinate services, but Jimyco failed to show up to the meeting.

On March 15, Cortez met Jimyco and gave him a letter containing a list of referrals for service providers. The letter referred Jimyco to Therapeutic Health Services, Sound Mental Health, Community Psychiatric Clinic, New Traditions, and Valley Cities for a drug and alcohol evaluation, and referred him to Catholic Community Services for an evidence-based parenting program.

On April 26, Cortez mailed Jimyco a service letter with instructions to contact Dr. Milner for a psychological evaluation, contact the referrals for the parenting program and drug and alcohol evaluation services, and contact her to schedule visitation with A.H.[7] She also asked Jimyco to schedule an in-person meeting to further discuss his participation in ordered services. Cortez provided Jimyco similar service letters on May 18, June 28, July 19, July 26, and

---

[6] Although released from custody, Jimyco was in custody at the King County Jail for at least part of each month from March 2018 until April 2019.

[7] The April 26 letter also asked Jimyco to contact Cortez if he needed help locating housing or assistance with transportation to services. Between March and September 2018, the Department provided Jimyco with more than $275.00 in transportation vouchers.

August 22, and each letter warned that his failure to complete the ordered services "may result in your rights as a parent being terminated."

Following an August 2018 permanency planning hearing, the court found that Jimyco was not in compliance and was not making progress because he had "been referred for all of his court-ordered services" and he had "not engaged in any of his services during this review period."

In the fall of 2018, Jimyco completed a chemical dependency assessment at Valley Cities that recommended he participate in inpatient treatment. Afterward, the Department assisted in securing a "bed date" for Jimyco at an inpatient treatment program in Yakima. But Jimyco never made it to this treatment program because he was "kicked off the Greyhound" bus that was scheduled to transport him to Yakima, and he failed to show up for alternative transportation that the Department had arranged for him.

On November 9, 2018, the Department petitioned to terminate Jimyco's parental rights. The Department alleged, in relevant part, that it referred Jimyco to various providers for a drug and alcohol evaluation, a provider for a parenting program, and three different evaluators for a psychological evaluation. The Department further alleged that Jimyco had "not complied with any aspects of his court-ordered services despite the Department's attempts to engage the father in services" and that he was unfit and incapable of safely parenting A.H.

In January 2019, Jimyco began, but did not finish, an in-patient substance abuse addiction treatment at Valley Cities because he was discharged for a rule violation. After this discharge, Jimyco relapsed and again started using methamphetamine, heroin, alcohol and possibly cocaine. Jimyco was arrested

and re-incarcerated in February 2019. Cortez then explored whether any addiction or drug and alcohol treatments were available to Jimyco while in-custody and instructed Jimyco on how to engage those services.

Jimyco's termination trial began in April 2019. At trial, Jimyco testified that he was serving a nine month sentence for violating a no-contact order and expected to be released in a "couple of months." Despite acknowledging that he had met with Cortez to discuss services, he could not recall Cortez referring him to a psychological evaluator or to a parenting program. He conceded: "I'm not able to take care of my kid right now."

Sharon Cortez testified that, while she recognized Jimyco's substance abuse and mental health issues were "co-occurring" deficiencies and needed integrated treatment, she had not obtained a mental health diagnosis for Jimyco and, consequently, was unable to arrange treatment for "a co-occurring disorder." Cortez explained that, in her psychological evaluation referral, she asked the evaluator to also determine whether Jimyco suffered from learning disabilities, cognitive problems, or developmental delays that would interfere with his ability to parent A.H. But, as Cortez testified, Jimyco never completed this psychological evaluation.

Virginia Whalen, A.H.'s guardian ad litem, testified that A.H., then 19-months old, has special needs and receives speech and physical therapy. She stated that A.H. had been placed with maternal relatives in Montana since June 2018. Whalen testified that the "near future" for a child A.H.'s age is measured by days. She also concluded that it would be detrimental for A.H. to

wait another nine to twelve months for Jimyco to be ready to parent and care for A.H.[8] Whalen recommended that Jimyco's parental rights be terminated.

Larry Greene, Jimyco's brother, testified to recently reconnecting with Jimyco after several years of not having any contact. Larry expressed a willingness to help Jimyco with housing, transportation, and employment.

After the two-day termination hearing and reviewing 84 exhibits, on May 16, 2019, the trial court entered an order terminating Jimyco's parental rights to A.H. In its findings, the court determined that all necessary, reasonably available services capable of correcting Jimyco's parental deficiencies had been offered or provided. The court also found that Jimyco was unfit to parent A.H. and that it was in A.H.'s best interests to terminate the parent-child relationship. The court additionally found that the Department made reasonable efforts to offer Jimyco services and visits with A.H. while he was incarcerated. Thus, the court granted the Department's termination petition.

Jimyco appeals.

## ANALYSIS

### A.    Standard of Review

Parental rights are a fundamental liberty interest protected by the United States Constitution. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). However, "the State has an equally compelling interest in protecting the physical, mental and emotional health of the children." In re

---

[8] Whalen's estimate of Jimyco's readiness to parent was based on him not being ready to care for A.H. for four to six months beyond his anticipated August 2019 release from custody.

Dependency of H.W., 70 Wn. App. 552, 555, 854 P.2d 1100 (1993) (citing In re Sego, 82 Wn.2d 736, 738, 513 P.2d 831 (1973)).

In order to terminate the parent-child relationship, the Department must first prove, by clear, cogent, and convincing evidence,[9] the six elements set forth in RCW 13.34.180(1).[10] Next, due process requires the trial court to expressly or impliedly find by clear, cogent, and convincing evidence that the parent is currently unfit. In re Welfare of A.B., 168 Wn.2d 908, 918-19, 232 P.3d 1104 (2010). If all of these elements are proven, the trial court must then find by a preponderance of the evidence that termination is in the "best interests" of the child. RCW 13.34.190(1).

---

[9] "Clear, cogent, and convincing" means highly probable. In re Welfare of M.R.H., 145 Wn. App. 10, 24, 188 P.3d 510 (2008).

[10] The six termination factors are:

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future . . . and

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.

On review, we ask only whether the court's findings of fact are supported by "substantial evidence"[11] and whether those findings support the court's conclusions of law. In re Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990). "If there is substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing, an appellate court should not disturb the trial court's findings." In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). We defer to the trial court on issues of conflicting testimony, credibility of the witnesses, and the weight or persuasiveness of the evidence. In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).

B.    Court-Ordered and Necessary Services

Jimyco primarily contends that the Department failed to prove that it offered or provided him all court-ordered and necessary remedial services.[12] The record does not support this assertion.

The Department has a statutory obligation to provide all services that the court ordered, as well as "'all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future.'" In re Parental Rights to K.M.M., 186 Wn.2d 466, 479, 379 P.3d 75 (2016) (quoting RCW 13.34.180(1)(d)). "Necessary services" are those services "needed to address a condition that precludes reunification of the parent and child." In re Dependency of A.M.M., 182 Wn. App. 776, 793, 332 P.3d 500 (2014). "Reasonably available" encompasses all reasonable services that are available

---

[11] "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." Bering v. SHARE, 106 Wn.2d 212, 220, 721 P.2d 918 (1986) (citing In re Snyder, 85 Wn.2d 182, 185-86, 532 P.2d 278 (1975)).

[12] This claim addresses Jimyco's challenge to termination findings 2.11, 2.12, 2.15, 2.18, 2.27, and conclusion of law 3.3.

within the agency, or within the community, or those services which the Department has existing contracts to purchase in order to enable a parent to resume custody. In re Dependency of T.L.G., 126 Wn. App. 181, 198, 108 P.3d 156 (2005). The Department must tailor the services it offers to meet each individual parent's needs. In re Welfare of S.J., 162 Wn. App. 873, 881, 256 P.3d 470 (2011).

Jimyco first argues that the Department failed to prove it offered him a psychological evaluation while he was incarcerated, despite the availability of such evaluations. We disagree.

At the beginning of the dependency, in December 2017, Jimyco chose to "wait" until he was out of custody to complete the psychological evaluation so that he could use an evaluator that he preferred. By February 2018, Jimyco agreed to use Dr. Milner and deferred the psychological evaluation until after he was released from custody. Jimyco concedes, and the multiple service letters show, that the Department offered him a psychological evaluation after he was no longer in custody. Upon Jimyco's release, the Department's offer of an in-custody evaluation was no longer a material issue.[13] Jimyco then failed to avail himself of the Department's numerous service offers.[14]

---

[13] Though Jimyco challenges whether substantial evidence supports the termination finding that the Department made reasonable efforts to offer him services while incarcerated, he does not contend that the trial court failed to properly consider his incarceration. See In re Parental Rights to K.J.B., 187 Wn.2d 592, 604, 387 P.3d 1072 (2017) (even though formal findings are not required under RCW 13.34.180(1)(f), "the superior court is expressly required to 'consider' the incarceration factors").

[14] Even considering that Jimyco was chronically incarcerated during the remainder of the dependency, this fact does not detract from the reality that (1) he was regularly out of custody during this same period and available to engage in services and (2) he agreed to complete the psychological evaluation when released from custody.

Next, Jimyco argues that, although the Department was aware of his co-occurring substance abuse and mental health disorders, the Department failed to offer him integrated services to address both deficiencies. This argument also lacks merit.

The trial court's unchallenged termination finding, which we accept as true on appeal,[15] establishes that Jimyco's mental health was due to be assessed as part of the ordered psychological evaluation that he failed to complete:

> There is little likelihood that conditions will be remedied so that the child can be placed with the father within the near future. The only evidence on this issue estimated it would take at least nine to twelve months of consistent participation and progress by the father before [A.H.] could possibly be placed in his care. [Jimyco] has not made any progress to date in correcting his parental deficiencies related to addiction to controlled substances (methamphetamine, heroin and alcohol) and his mental health issues, which remain undiagnosed, as he has not participated in his ordered psychological evaluation.

Clerk's Papers (CP) at 175 (emphasis added).

Department social worker Cortez testified that the purpose of a psychological evaluation was to determine if additional services are necessary for parents to address their deficiencies, but that she had not received a mental health diagnosis for Jimyco and was, therefore, unable to coordinate any additional mental health services for him. On this record, we conclude that substantial evidence shows the Department offered Jimyco a mental health assessment (with recommended treatment to follow) but was a service in which he failed to engage.[16]

---

[15] In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001).

[16] Jimyco relies on S.J., 162 Wn. App. 873 and In re Parental Rights to I.M.-M., 196 Wn. App. 914, 385 P.3d 268 (2016), to support his argument for integrated services. Both cases are distinguishable. The parents in S.J. and I.M.-M. actively participated in services. S.J., 162 Wn.

Even if we were to decide that the Department failed to provide necessary services to Jimyco, termination is still appropriate if the services would not have remedied his deficiencies in the foreseeable future. In re Dependency of T.R., 108 Wn. App. 149, 164, 29 P.3d 1275 (2001). The foreseeable future varies with the child's age. Id. For young children, the foreseeable future may mean a matter of months. In re Welfare of Hall, 99 Wn.2d 842, 850-51, 664 P.2d 1245 (1983) (finding eight months not in foreseeable future of 4-year-old). "Although 1 year may not be a long time for an adult decision maker, for a young child it may seem like forever." In re Dependency of A.W., 53 Wn. App. 22, 32, 765 P.2d 307 (1988).

Here, the provision of mental health services would not have remedied Jimyco's parental deficiencies in the near future, as noted by the court's unchallenged termination findings:

> 2.14 [Jimyco] engaged in in-patient substance abuse addiction treatment at Valley Cities in January, 2019, but was discharged for a rule violation. Despite testifying about what he learned in treatment, [Jimyco] acknowledged using methamphetamine, heroin, alcohol and possibly cocaine after this discharge.
>
> . . .
>
> 2.17 Nine to twelve months is too long for one year-old [sic] [A.H.] to wait on the remote possibility of progress by [Jimyco]. [A.H.] will [be] two years old in September 2019. The near future for a child this age is a matter of days, not months or years.
>
> . . .

---

App. at 877; I.M.-M., 196 Wn. App. at 918. Here, however, Jimyco's mental health status was not diagnosed, and additional services were not offered, due to his failure to participate in services.

2.25 The child's father is unfit to parent this child. [A.H.'s] physical and psychological health would be at risk if [the child] were placed with [Jimyco] at this time.

CP at 175-76.

Thus, we conclude that substantial evidence supports the trial court's findings that the Department met its burden under RCW 13.34.180(1)(d) to offer or provide all ordered and necessary services capable of correcting Jimyco's parental deficiencies.

C. Child's Best Interests

Jimyco next contends that because the Department failed to establish it provided him all necessary services, the "trial court's best-interests determination was therefore premature and cannot stand."[17] This claim fails because, as discussed above, we conclude that the Department met its burden under RCW 13.34.180(1)(d). The trial court's best-interest findings were not premature.

Consequently, because Jimyco does not argue that the court's best interest findings are unsupported by substantial evidence, but rather hinges his argument on the assumption that he did not receive all services, we need not analyze this finding further.

We affirm.

Andrus, J.

WE CONCUR:

Chun, J.

---

[17] This claim addresses Jimyco's challenge to termination findings 2.18 and 2.26.