

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JAN 2 6 2017

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Jan 26, 2017

**SUSAN L. CARLSON**
**SUPREME COURT CLERK**

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parental Rights to K.J.B., a minor child. ) ) ) | No. 91921-6 |
| J.B., ) ) | En Banc |
| Petitioner, ) ) | |
| v. ) ) | Filed JAN 2 6 2017 |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, ) ) ) ) | |
| Respondent. ) ) | |

WIGGINS, J.—In 2013, the legislature amended the statute governing termination of parental rights. The legislature provided that "[i]f the parent is incarcerated, the court *shall* consider" a set of factors before determining that "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." RCW 13.34.180(1)(f) (emphasis added). Petitioner J.B. argues that his parental rights cannot be terminated without express written findings of fact on these incarcerated parent factors. We hold that while explicit findings on the incarcerated parent factors are not statutorily required, consideration of the factors is mandatory. Because the

trial court failed to consider the incarcerated parent factors in this case, we reverse and remand the case to the trial court for consideration of the incarcerated parent factors.

## FACTS

J.B. is the biological father of K.J.B. K.J.B. was born on April 20, 2012 and was immediately removed from her mother's care because of her mother's prenatal methamphetamine use. K.J.B. was initially placed in relative care. At one month old, K.J.B. was moved to a foster care family, where she currently resides. Her mother has already relinquished her parental rights and is not a party to this proceeding. K.J.B. has never lived with her biological mother or father.

J.B. has struggled with drug addiction since his adolescence. In October 2012, the court entered a dependency order requiring J.B. to complete a drug/alcohol evaluation and treatment, random urinalysis testing, and a parenting assessment and instruction. J.B. completed a parenting assessment and participated in parenting instruction. He started several drug treatment programs but never completed any. In the findings of fact, the trial judge noted, "The father has a very serious drug addiction." Clerk's Papers (CP) at 19 (Findings of Fact (FF) 1.11). He "has not been able to demonstrate sobriety for any significant period of time, despite being provide[d] ample time and opportunity to do so." FF 1.20. "His substance abuse

addiction prevents him from parenting his child." FF 1.22. "The father has demonstrated that he is incapable of providing or unwilling to provide a safe, healthy and stable environment for [K.J.B.] due to his continued substance abuse addiction and inability to complete treatment." FF 1.24. In his oral ruling, the judge stated, "I find that your use of methamphetamine has prevented you from providing care for this child for extended periods of time and you have a documented unwillingness, and that's a difficult word to use for you, [J.B.], but a documented unwillingness to receive and complete treatment or documented multiple failed treatments . . . ." 2 Verbatim Report of Proceedings (VRP) at 249.

J.B. participated in visits with K.J.B. in January 2013 and more regularly visited with her from March 2013 to January 2014. One parenting professional testified that J.B. was nurturing and loving toward K.J.B. and that he showed compassion and sensitivity. However, the trial judge found that "[t]he father's parental deficiencies have not been corrected." FF 1.10.

In January 2014, J.B. was found guilty of first degree unlawful possession of a firearm and possession of a stolen firearm. He was sentenced to 74 months of incarceration.

At the time of the termination hearing, J.B. had been incarcerated for less than 52 days.[1] In considering the termination of J.B.'s parental rights, the trial court

---

[1] J.B. was incarcerated on January 24, 2014. The termination trial started on March 17, 2014.

apparently applied outdated statutory language in framing its analysis. Specifically, the court applied RCW 13.34.180(1)(f) without mentioning its 2013 amendments requiring courts to consider additional factors relevant to incarcerated parents. Without expressly considering these factors set forth in RCW 13.34.180(1)(f), the trial court terminated J.B.'s parental rights.

J.B. appealed. The Court of Appeals acknowledged "the trial court's failure to weigh the required considerations" but ruled that it was harmless error that did not require reversal. *In re Parental Rights to K.J.B.*, 188 Wn. App. 263, 285, 354 P.3d 879 (2015). J.B. appealed, and we accepted review.

## STANDARD OF REVIEW

We review matters of statutory interpretation de novo. *O.S.T. v. Regence BlueShield*, 181 Wn.2d 691, 696, ¶ 8, 335 P.3d 416 (2014).

## ANALYSIS

Our fundamental goal in statutory interpretation is to "discern and implement the legislature's intent." *State v. Armendariz*, 160 Wn.2d 106, 110, ¶ 7, 156 P.3d 201 (2007). Where "the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell v. Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We discern plain meaning "from all that the Legislature has said in the statute and related statutes

4

which disclose legislative intent about the provision in question." *Id.* at 11. "[I]f, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Id.* at 12. Plain language that is not ambiguous does not require construction. *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013).

*Washington's Statutory Scheme for Termination of Parental Rights*

The paramount goal of child welfare legislation is to reunite the child with the legal parents if reasonably possible. *In re Dependency of J.H.*, 117 Wn.2d 460, 476, 815 P.2d 1380 (1991); *In re Custody of C.C.M.*, 149 Wn. App. 184, 202 P.3d 971 (2009). Parents have a fundamental liberty and property interest in the care and custody of their children. U.S. CONST. amends. V, XIV; WASH. CONST. art. I, § 3; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). "The due process clause of the Fourteenth Amendment protects a parent's right to the custody, care, and companionship of [his or] her children." *In re Welfare of Key*, 119 Wn.2d 600, 609, 836 P.2d 200 (1992) (citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). Due process requires a court to find the parent to be currently unfit before the parent-child relationship may be terminated.

In order to deem a parent unfit and thus terminate the parent-child relationship, the State must satisfy a two-pronged test. *In re Dependency of K.N.J.*, 171 Wn.2d 568, 576, ¶ 15, 257 P.3d 522 (2011). The first prong focuses on the adequacy of the parent and requires the State to establish six elements, outlined in RCW 13.34.180(1).[2] "Each of the six statutory elements must be proved by clear, cogent, and convincing evidence before the State may terminate parental rights." *K.N.J.*, 171 Wn.2d at 576-77 (citing *In re Welfare of C.S.*, 168 Wn.2d 51, 55, ¶ 7, 225 P.3d 953 (2010)); RCW 13.34.180(1). If the six statutory elements of subsection (1) are established, then the parent has been implicitly found to be an

---

[2] RCW 13.34.180(1) requires the State to prove:
(a) That the child has been found to be a dependent child;
(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
(d) That the services rendered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . [;]
. . . .
(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and accessing visitation or other meaningful contact with the child.

unfit parent. *K.N.J.*, 171 Wn.2d at 577, ¶ 15 (citing *In re Dependency of K.R.*, 128 Wn.2d 129, 141-42, 904 P.2d 1132 (1995)).

The second prong that the State must prove focuses on the child's best interests. RCW 13.34.190. Only if the first prong is satisfied may the court reach the second. *In re Interest of S.G.*, 140 Wn. App. 461, 470, ¶ 26, 166 P.3d 802 (2007); *In re Welfare of C.B.*, 134 Wn. App. 942, 952, ¶ 21, 143 P.3d 846 (2006).

*Amendments To Protect Rights of Incarcerated Parents*

The legislature recently recognized that statutory dependency/termination requirements and timelines often undermine the efforts of incarcerated parents to be reunited with their children. In 2013, this recognition led to Substitute House Bill (SHB) 1284, titled "AN ACT Relating to the rights of parents who are incarcerated." SUBSTITUTE H.B. 1284, 63d Leg., Reg. Sess. (Wash. 2013). SHB 1284 amended several statutes in the Juvenile Court Act, effective July 2013. *Id.* (amending RCW 13.34.067, .136, and .145 and reenacting and amending .180). The primary sponsor of SHB 1284 testified that its intent was to provide added protection for incarcerated parents facing termination of their parental rights. Hr'g on H.B. 1284 Before the H. Early Learning & Human Servs. Comm., 63d Leg., Reg. Sess. (Wash. Feb. 5, 2013) (testimony of Representative Mary Helen Roberts), *audio recording by TVW*, Washington State's Public Affairs Network, http://www.tvw.org.

Prior to SHB 1284, the sixth element of the parental rights termination statute, RCW 13.34.180(1)(f), required the state to prove "[t]hat continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." *In re Dependency of D.L.B.*, 188 Wn. App. 905, 914, ¶ 24, 355 P.3d 345 (2015), *aff'd*, 186 Wn.2d 103, 376 P.3d 1099 (2016). In SHB 1284, the legislature added the following language to this sixth factor:

> If the parent is incarcerated, the court *shall* consider
>
> [(1.)]  whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b);
> [(2.)]  whether the department or supervising agency made reasonable efforts as defined in this chapter; and
> [(3.)]  whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.[3]

SUBSTITUTE H.B. 1284, at 13-14 (emphasis added).

SHB 1284 also added subsection (5)(b) to RCW 13.34.145. This new section provides a nonexclusive list of factors that the trial court "may" consider in determining whether an incarcerated parent "maintains a meaningful role in the child's life," as well as various types of barriers that incarcerated parents may face in maintaining such a role:

---

[3] This language was added to subsection (1)(f) and became effective on July 28, 2013. SUBSTITUTE H.B. 1284.

(b) The court's assessment of whether a parent who is incarcerated maintains a meaningful role in the child's life may include consideration of the following:

i. The parent's expressions or acts of manifesting concern for the child, such as letters, telephone calls, visits, and other forms of communication with the child;

ii. The parent's efforts to communicate and work with the department or supervising agency or other individuals for the purpose of complying with the service plan and repairing, maintaining, or building the parent-child relationship;

iii. A positive response by the parent to the reasonable efforts of the department or supervising agency;

iv. Information provided by individuals or agencies in a reasonable position to assist the court in making this assessment, including but not limited to the parent's attorney, correctional and mental health personnel, or other individuals providing services to the parent;

v. Limitations in the parent's access to family support programs, therapeutic services, and visiting opportunities, restrictions to telephone and mail services, inability to participate in foster care planning meetings, and difficulty accessing lawyers and participating meaningfully in court proceedings; and

vi. Whether the continued involvement of the parent in the child's life is in the child's best interest.

SUBSTITUTE H.B. 1284, at 8-9 (formatting omitted).

*Plain Language of Amendments To Protect Rights of Incarcerated Parents*

J.B. argues that the trial court failed to consider all of the mandatory termination factors set forth in RCW 13.34.180(1)(f). He urges this court to hold that the incarcerated parent factors "changed the statutory termination element in RCW 13.34.180(1)(f), becoming part of the termination element that must be proved" by clear, cogent, and convincing evidence. Pet'r's Suppl. Br. at 5 (citing *In re Dependency of A.M.M.*, 182 Wn. App. 776, 784, 787-90 , 332 P.3d 500 (2014)). The

State argues the 2013 amendments do not change the actual elements that the Department of Social and Health Services (DSHS) must prove. "Rather, the added language provides factors that may inform the court as to whether this element is met."[4] Suppl. Br. of DSHS at 10 (citing *A.M.M.*, 182 Wn. App. at 787). At issue is whether the trial court was statutorily required to consider the incarceration factors.

We begin with the plain language of the statute. The provision at issue here, RCW 13.34.180(1)(f), states that "the court shall consider" three listed factors. A full interpretation of this phrase requires consideration of both "shall" and "consider."

## A. "Shall" Is Mandatory

It is well settled that the word "shall" in a statute is presumptively imperative and operates to create a duty, rather than to confer discretion.[5] *State v. Bartholomew*, 104 Wn.2d 844, 848, 710 P.2d 196 (1985). Moreover, when adding the word "shall,"

---

[4] Justice González's dissent would decline to consider the merits of these arguments, as "J.B. did not object to the court's failure" to consider the incarceration factors. Dissent (González, J.) at 1-2. Yet we frequently exercise our discretion to review an issue not raised in the trial court, and do so in this instance. RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."); *Stephenson v. Pleger*, 150 Wn. App. 658, 661, 208 P.3d 583 (2009) (noting that appellate courts "have discretion under RAP 2.5(a) to review an issue not raised in the trial court"); *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 718, 375 P.3d 596 (2016) ("We have discretion to decide whether we address an issue asserted for the first time on appeal."); *cf. State v. Blazina*, 182 Wn.2d 827, 832-33, 344 P.3d 680 (2015) (noting that we *may* refuse to review claims not raised in trial court).

[5] The word "shall" is defined as follows: "used to express a command or exhortation . . . [;] used in laws, regulations, or directives to express what is mandatory." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2085 (2002).

10

the legislature simultaneously established additional factors that the court "may" consider. RCW 13.34.145(5)(b). We look to a legislature's facility with the terms in our analysis. *Kingdomware Techs., Inc. v. United States*, __ U.S. __, 136 S. Ct. 1969, 1977, 195 L. Ed. 2d 334 (2016) (noting that "[w]hen a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty"). As a result, the legislature's changes require trial courts to consider the implications of incarceration when the parent is incarcerated. RCW 13.34.180(1)(f). Because the legislature states that courts "shall" consider these issues, the inquiry is mandatory.

In contrast, Justice Madsen's dissent would construe "shall" as mandatory only when the trial court's decision to terminate parental rights visibly rests, at least in part, on the parent's incarceration. Dissent (Madsen, J.) at 5 (noting that "here, the trial court's oral ruling and written findings make clear that the father's incarceration played no role in the trial court's reasoning"). For support, Justice Madsen's dissent cites to legislative history, which in turn states that the amendment "[e]xpands the rights of parents who are incarcerated with regard to . . . [t]ermination of parent-child relationship proceedings." 2 LEGISLATIVE DIGEST AND HISTORY OF BILLS, 63d Leg., at 87 (2d ed., Wash. 2013-14); dissent (Madsen, J.) at 5 n.2. Yet this language does not indicate that the rights of incarcerated parents are expanded only when the parent's incarceration is explicitly at issue in the decision.

While not openly stated in this legislative history, we acknowledge that there are logical reasons for supposing that the incarceration factors should be applied only where the court demonstrably considered the implications of incarceration as part of its termination decision. After all, if the trial court did not rely on the parent's incarceration in reaching its decision, how would factors tending to rebut incarceration's impact even apply? Yet this conjecture fails to account not only for the language the legislature actually passed, but also for other justifications the legislature may have had for passing a broad, clear rule applying to *all* incarcerated parents. For instance, the legislature might consider a parent's incarcerated status as unavoidably implicit in any termination of an incarcerated person's parental rights, and thus the incarceration factors would be critical considerations as well. While Chief Justice Madsen's dissent might find this statutorily mandated step to be unnecessary, excessive, or both, we leave these policy considerations to the legislature. Absent an absurd result, we should be slow to assume that the legislature meant something other than what it said.

In light of the literal meaning of "shall," and given the legislature's stated protective goals, we hold that consideration of the RCW 13.34.180(1)(f) factors is mandatory. *See* SUBSTITUTE H.B. 1284.

B. "Consider" Requires Weighing on the Record

Next we must consider what action, exactly, RCW 13.34.180 mandates. Title 13 RCW requires, but does not define, that courts "consider" the incarceration factors. Yet "consider" might connote a range of actions, from internal contemplation to explicit written findings.

The first definition of "consider" in *Webster's* is "to reflect on : think about with a degree of care or caution." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 483 (2002). One Court of Appeals decision suggested this definition for "consider" when interpreting the statute's requirements: "A 'consideration' of evidence ultimately means a weighing or balancing of facts, along with a resolution of that weighing." *In re Parental Rights to M.J..*, 187 Wn. App. 399, 409, 348 P.3d 1265 (2015). "[T]he legislature has had no trouble mandating *findings* in other portions of the dependency statute when it has wanted to do so." *Id.* (emphasis added). For example, in order to declare a child dependent, RCW 13.34.110 mandates a fact-finding hearing and directs the court to "make written findings of fact, stating the reasons therefor." We agree and hold that findings are not required when the statute requires only that the factor be considered.

Here, RCW 13.34.180(1)(f) directs the court to specify only whether certain allegations were established according to specific burdens of proof. RCW 13.34.190(1)(a)(i) (requiring, pursuant to RCW 13.34.180(1), allegations to be

13

established by "clear, cogent, and convincing evidence"). And although we recognize that entry of findings is a good practice and helpful on review, this step is not essential to demonstrate that the court considered the mandatory factors.

Thus, even though formal findings are not required, the superior court is expressly required to "consider" the incarceration factors. We turn then to whether the trial court in this case considered the factors as required by statute.

*The Incarceration Factors Were Not Considered in This Case*

RCW 13.34.180(1)(f) requires a trial court to consider whether (1) a parent maintains a meaningful role in the child's life, (2) the department made reasonable efforts, and (3) particular barriers of incarceration existed. The record establishes that the trial court did not address or even refer to the 2013 amendments or the specific statutory factors pertaining to incarcerated parents at any point during the course of the trial, in its oral decision, or in the written findings of fact and conclusion of law. Nor did counsel for either side direct any argument to the court based on the specific statutory amendments.

Indeed, it appears that the trial court judge applied an outdated version of RCW 13.34.180(1)(f), without mentioning the 2013 amendment requiring consideration of the incarcerated parent factors. Instead, the judge's oral decision and findings of fact focused on J.B.'s addiction to methamphetamine and the problems that this addiction caused in his life. *See* 2 VRP at 246-49; FF 1.22 ("The

14

father is currently unfit to parent because he is unable to maintain sobriety and is unable to provide a safe and stable home environment for the child at this time or in the near future. His substance abuse addiction prevents him from parenting his child. He has been unable to successfully complete the necessary treatment.").[6]

There is evidence in the record relevant to the incarceration factors, though it is not discussed. For instance, at the time of trial, J.B. had not contacted his social worker or inquired about K.J.B.'s well-being at any point during his incarceration. CP at 22, 185. Nor had the social worker received any messages from J.B. through his attorney. CP at 198. The trial court heard extensive testimony about the department's efforts to remedy J.B.'s drug addiction. CP at 9-12, 42, 45-46, 48. No evidence was presented regarding particular barriers of incarceration.

While the trial court focused on J.B.'s drug addiction, this emphasis did not preclude application of the incarceration factors. Because the judge cites to RCW 13.34.180(1)(f) without referring to the factors, and because the judge does not mention the factors at any point, we are unable to conclude that the trial court weighed the mandatory issues in reaching its decision.

---

[6] The judge stressed that even though J.B.'s real problem was drug addiction, J.B. failed to complete any treatment programs. FF 1.20 ("The father has not been able to demonstrate sobriety for any significant period of time, despite being provide[d] ample time and opportunity to do so."); FF 1.21 ("The father has a substance abuse addiction and continues to struggle with sobriety. He has not been able to complete treatment and continues to relapse."); FF 1.24 ("The father has demonstrated that he is incapable of providing or unwilling to provide a safe, healthy and stable environment for [K.J.B.] due to his continued substance abuse addiction and inability to complete treatment.").

The Court of Appeals in this case acknowledged that "the amended statute does not contain an exception to the mandatory language." *K.J.B.*, 188 Wn. App. at 284. "Nevertheless," the court continued, "a failure to weigh the required considerations will not require reversal if the State's case is strong or if the factors are not contested." *Id.* (citing *M.J.*, 187 Wn. App. at 409). Thus, relying on other appellate court precedent, the Court of Appeals found the evidence to be sufficiently strong such that reversal was not required: "J.B. made no effort to play a meaningful role in his daughter's life," while the department "made reasonable attempts to remedy J.B.'s parental deficiencies," and there were no "barriers of incarceration" that impacted J.B. *Id.* at 284-85. By weighing the evidence on appeal, the Court of Appeals concluded that "the trial court's failure to weigh the required considerations was harmless error, which does not require reversal." *Id.* at 285.

We disagree.

Again, the paramount goal of child welfare legislation is to reunite the child with the legal parents if reasonably possible. It is the State's responsibility to establish each element necessary to terminate parental rights. More specifically, the legislature has mandated that the trial court "shall consider" certain contextual factors relevant to incarceration when terminating the rights of incarcerated parents. RCW 13.34.180(1)(f). Here, an incarcerated parent faced termination of his parental rights and we lack any evidence that the court was aware of, let alone considered,

the statutory incarceration factors. In light of the significant rights at stake, we reverse and remand for the trial court to consider and apply the mandatory RCW 13.34.180(1)(f) factors.[7]

## CONCLUSION

For the foregoing reasons, we reverse the Court of Appeals and remand to the trial court for its consideration of the mandatory incarceration factors, RCW 13.34.180(1)(f), and for other proceedings, if any, consistent with this opinion.

---

[7] Contrary to the impression of Justice González's dissent, we do not direct the trial court "to start all over." Dissent (González, J.) at 1. We simply remand for consideration of the incarceration factors, which are, as we observe, mandatory.

No. 91921-6

_____
Wiggins, J.

WE CONCUR.

_____          _____
Johnson, J.

_____          _____
Owens, J.                                                Gordon McCloud, J.

_____          _____
Fairhurst, C.J.

18

*In re Parental Rights to K.J.B.*

No. 91921-6

MADSEN, J. (dissenting)—The majority acknowledges that findings on the incarcerated parent factors at issue here are not required, yet reverses and remands for the trial court to consider such factors. In my view, the termination of parental rights should be affirmed under the circumstances of this case. I disagree with the majority that the factors listed in RCW 13.34.145(5)(b) are mandatory requirements that must be expressly considered in all cases. In my view, the trial court did not err, and because substantial evidence supports the trial court's essential termination findings, we should affirm. Because the majority requires needless delay in permanency for K.J.B., I dissent.

This court has explained that to terminate a parent-child relationship, the State must prove the six elements found in RCW 13.34.180(1) by clear, cogent, and convincing evidence; then the court will determine if termination of the relationship is in the best interest of the child. *In re Dependency of K.N.J.*, 171 Wn.2d 568, 576-77, 257 P.3d 522 (2011). At issue here is what is required in the sixth element, found at RCW 13.34.180(1)(f), which states:

> That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors

identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.

In my view, the only *finding* required under subsection (1)(f) is a determination of whether "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." RCW 13.34.180(1)(f). Here, the trial court made this finding noting supporting evidence and stating its reasoning. *See* Clerk's Papers (CP) at 22.

In the event the parent is incarcerated, subsection (1)(f) further provides that the court will also consider "whether a parent maintains a meaningful role in his or her child's life." RCW 13.34.180. In my view, that contingent inquiry is informed by the factors and considerations contained in the remainder of subsection (1)(f), or any other relevant consideration bearing on the inquiry, but such considerations are not themselves requirements that must be met. RCW 13.34.145(5)(b) supports this reading of RCW 13.34.180(1)(f) by expressly stating that the court "may" consider listed factors in assessing whether an incarcerated parent has "maintain[ed] a meaningful role" in the child's life.[1] This reading harmonizes the provisions contained in both RCW 13.34.180(1)(f) and RCW 13.34.145(5)(b).

---

[1] RCW 13.34.145(5)(b) provides:
   The court's assessment of whether a parent who is incarcerated maintains a meaningful role in the child's life may include consideration of the following:

No. 91921-6
Madsen, J., dissenting

In this case, the trial court *did* essentially consider whether the parent maintained a meaningful role in the child's life, finding that the parent "does not have a bond with the child," that "[t]he child has no bonding to her father," that the "father is currently unfit to parent because he is . . . unable to provide a safe and stable home environment for the child," and that "[h]is substance abuse addiction prevents him from parenting his child." CP at 22. In my view, the trial court did not err. It entered the essential finding called for in RCW 13.34.180(1)(f): that continuation of the parent-child relationship would diminish the child's prospects for permanent placement. *See id.* In making that determination, the trial court assessed the parent's role in the child's life, as discussed above. The basis of that decision was the particular deficiency present in this case—the father's drug addiction. That deficiency was present and continuing since the child's birth, rendering the father incapable of parenting his child. The father's recent incarceration was unrelated to this deficiency and played no role in the trial court's

(i) The parent's expressions or acts of manifesting concern for the child, such as letters, telephone calls, visits, and other forms of communication with the child;

(ii) The parent's efforts to communicate and work with the department or supervising agency or other individuals for the purpose of complying with the service plan and repairing, maintaining, or building the parent-child relationship;

(iii) A positive response by the parent to the reasonable efforts of the department or the supervising agency;

(iv) Information provided by individuals or agencies in a reasonable position to assist the court in making this assessment, including but not limited to the parent's attorney, correctional and mental health personnel, or other individuals providing services to the parent;

(v) Limitations in the parent's access to family support programs, therapeutic services, and visiting opportunities, restrictions to telephone and mail services, inability to participate in foster care planning meetings, and difficulty accessing lawyers and participating meaningfully in court proceedings; and

(vi) Whether the continued involvement of the parent in the child's life is in the child's best interest.

3

termination decision. Under these circumstances, the trial court's failure to make findings or to expressly consider the discretionary factors listed in RCW 13.34.145(5)(b) related to incarceration, which played no role in the trial court's determination, was not error.

The majority chides the trial court for ignoring "evidence in the record relevant to the incarceration factors," noting for example that "J.B. had not contacted his social worker or inquired about K.J.B.'s well-being at any point during his incarceration." Majority at 15. But such evidence further demonstrates that substantial evidence supports the trial court's relevant, required findings. We will not disturb the trial court's findings of fact in a termination proceeding so long as they are supported by substantial evidence in the record. *In re Parental Rights to B.P.*, 186 Wn.2d 292, 313, 376 P.3d 350 (2016). The noted evidence provides additional support for the trial court's consideration and assessment of the "maintained a meaningful role" contingent inquiry, which in turn further supports the trial court's essential finding that continuation of the parent-child relationship diminished the child's prospects for early integration into a stable and permanent home. Thus, properly viewed, substantial evidence supports the trial court's determination and finding regarding the subsection (1)(f) element.

Finally, I note that the discretionary factors listed in RCW 13.34.145(5)(b) themselves suggest that the legislative purpose behind inclusion of such consideration was to provide protection to incarcerated parents in termination proceedings who were

4

separated from their children due to their incarceration.[2] But here, the trial court's oral

ruling and written findings make clear that the father's incarceration played no role in the

trial court's reasoning for terminating the parental rights in this case. As noted, such

determination turned on the father's history of substance abuse, his repeated failure to

complete treatment, and his continuing inability to remain sober and provide a safe

environment for his child. Accordingly, the present case is not the circumstance that the

legislature was trying to address in amending subsection (1)(f) to add the considerations

concerning incarcerated parents who suffered parental deficiencies related to the

incarceration itself. In construing and applying a statute, we are to keep in mind the

"'object to be accomplished'" by the legislation and the "'consequences that would

result'" from construing the statute one way or another. *BAC Home Loans Servicing, LP

v. Fulbright*, 180 Wn.2d 754, 766, 328 P.3d 895 (2014) (internal quotation marks

omitted) (quoting *Burns v. City of Seattle*, 161 Wn.2d 129, 146, 164 P.3d 475 (2007)).

Moreover, "[i]t is with the welfare of the children in mind that the rights of the parents

are examined." *In re Welfare of Sego*, 82 Wn.2d 736, 738, 513 P.2d 831 (1973).

Accordingly, in termination proceedings where the rights of the parent and the welfare of

the child conflict, the best interests of the child must prevail. *In re Interest of Pawling*,

101 Wn.2d 392, 399, 679 P.2d 916 (1984). Here, the majority overturns a parental rights

termination decision, which advanced the welfare of the child, based on the trial court's

---

[2] *See* 2 LEGISLATIVE DIGEST AND HISTORY OF BILLS, 63d Leg., at 87 (2d ed., Wash. 2013-14) (noting SHB 1284 "[e]xpands the rights of parents who are incarcerated with regard to . . . [t]ermination of parent-child relationship proceedings").

failure to expressly consider a discretionary criteria that played no role in the termination

decision and will not alter the result on remand. Under the circumstances of this case, the

trial court's parental rights termination order should be affirmed.

Accordingly, I dissent.

No. 91921-6
Madsen, C.J., dissenting

_Madsen, J._

_Stephens, C.J._

_Yu, J._

7

*In re Parental Rights to K.J.B.*, No. 91921-6 (González, J., dissenting)

GONZÁLEZ, J. (dissenting) — We could have and should have decided this case months ago. The proper resolution of this appeal is simple. J.B. did not preserve the error, the trial court's error was harmless, and our collective delay and ultimate remand is harmful to K.J.B. The Court of Appeals filed its opinion June 11, 2015; we granted review eight months later, on February 10, 2016; and now, nearly three years after trial, the majority is sending the case back for the trial court to start all over. K.J.B. may well be an adult before the justice system is done "helping" her. I respectfully dissent.

I believe the trial court's failure to explicitly consider the statutory incarcerated parent factors listed in RCW 13.34.180(1)(f) is not, on its own, reversible error. *See In re Parental Rights to M.J.*, 187 Wn. App. 399, 409, 348 P.3d 1265 (2015); *cf. In re Dependency of D.L.B.*, 186 Wn.2d 103, 122, 376 P.3d 1099 (2016). The error was not preserved and should not be reviewed on appeal. J.B. did not object to the court's failure to explicitly consider the fact that he had

1

been incarcerated for the final two months of a nearly two-year dependency proceeding.

The discretion the majority exercises to review J.B.'s unpreserved claim should have been used to end this prolonged termination. *In re Dependency of M.S.R.*, 174 Wn.2d 1, 11-23, 271 P.3d 234 (2012) (citing RAP 2.5(a) and holding that "children of parents subject to dependency and termination proceedings have due process rights that must be protected"). Instead of invoking RAP 2.5, the majority should be considering the dangers of delay. *City of Seattle v. Patu*, 147 Wn.2d 717, 722-23, 58 P.3d 273 (2002) (C. Johnson, J., dissenting) ("I would apply . . . as we do other prudential doctrines, with discretion and to further specific judicial goals." (citing RAP 2.5(a))). "[T]he child has a strong interest in the speedy resolution of dependency and termination proceedings, *see* RCW 13.34.020, and the State has an interest in ensuring such a speedy resolution to ensure that children do not remain in legal limbo." *In re Dependency of M.H.P.*, 184 Wn.2d 741, 762, 364 P.3d 94 (2015).

The majority concentrates on RCW 13.34.180(1)(f)'s use of "shall." Majority at 11. I agree that the word "shall" generally means mandatory, but a judicious interpretation does not stop at the dictionary. "Shall" should be interpreted in light of our constitution: "Justice in all cases *shall* be administered openly, and *without unnecessary delay*." WASH. CONST. art. I, § 10 (emphasis

2

added). Similarly, the legislature provided the framework to interpret RCW 13.34.180(1)(f)'s use of "shall."[1] *Contra* majority at 17 (neglecting the legislature's use of "unless" and "speedy" when referencing RCW 13.34.020). Justice demands K.J.B.'s *speedy* permanent placement. *E.g., In re Parental Rights to K.M.M.*, 186 Wn.2d 466, 495, 379 P.3d 75 (2016) ("The alternative to termination is not placing K.M.M. back in her father's custody, but the continuation of her dependency, which has already spanned almost seven years."); *In re Dependency of K.N.J.*, 171 Wn.2d 568, 584, 257 P.3d 522 (2011) (termination of parental rights was in child's best interests, after nearly six years of legal uncertainty). *But see* majority at 12, 15 ("Absent an absurd result, we should be slow to assume that the legislature meant something other than what it said"; "at the time of trial, J.B. had not contacted his social worker or inquired about K.J.B.'s well-being at any point during his incarceration.").

By the time of the termination hearing, K.J.B. had been in a safe and stable foster care home for 22 months, her foster parents were planning to adopt her, and they were not interested in a guardianship. Continuation of the parent and child

---

[1]

> [T]he legislature declares that the family unit should remain intact *unless* a child's right to conditions of basic nurture, health, or safety is jeopardized. . . . The right of a child to basic nurturing includes the right to a safe, stable, and permanent home and a *speedy* resolution of any proceeding under this chapter.

> RCW 13.34.020 (emphasis added).

3

relationship clearly diminished K.J.B.'s prospects for early integration into the stable and permanent home of her adoptive family. The trial court made a detailed oral ruling from the bench with ample justification for the termination. 2 Verbatim Report of Proceedings at 245-51 (Mar. 18, 2014). The judge specifically gave the parties an opportunity to ask questions. *Id.* at 250. This point in the proceedings would have been the perfect time for J.B. to object to any seeming failure to consider the statutory incarceration factors. Such an objection would have given the trial judge the opportunity to promptly remedy any error and, of course, would have provided a record for the appellate courts to review. Without such an objection, the shadow of uncertainty over this child's fate has lingered in our courts more than 1,500 days since dependency proceedings started. Suppl. Br. of State of Wash., Dept. of Soc. & Health Servs. at 2-3 (citing Clerk's Papers at 9, 11). K.J.B. was born on April 20, 2012. How old will she be when this termination ends?

In matters of juvenile justice, getting to the right result quickly is a priority. The court is well aware of this.[2] For example, we recently adopted new internal

---

[2] *See* Letter from Justice Bobbe J. Bridge (Ret.) (Aug. 15, 2016) *in* ALICIA LEVEZU, DEFENDING OUR CHILDREN: A CHILD'S ACCESS TO JUSTICE IN WASHINGTON STATE (2016) ("Only with a data-driven understanding of what actually happens in our courts can we build a system responsive to the needs of the children who are at the heart of our work."), https://www.law.washington.edu/Clinics/Child/Projects/DefendingOurChildrenAugust2016.pdf [https://perma.cc/SP72-GBCK].

deadlines for drafting opinions related to dependency and termination of parental rights.[3] Thus far, it is proving effective—compare the length of time from oral argument to filing in 2016's *D.L.B.* (6 months) and *K.M.M.* (9 months) to 2011's *K.N.J.* (18 months). This progress should not stop; more must be done to minimize delay and achieve permanency for children in dependency proceedings.

J.B. did not object at trial, and any error was harmless. I respectfully dissent.

González, J.

---

[3] Wash. Supreme Court, Internal Rules, Rule II-5(A)(3) (amended Apr. 28, 2016), https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Documents/SupremeCourtInternalRules.pdf [https://perma.cc/C47W-R9VQ]; *see also* RAP 18.13A.