## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Dependency of
A.B. (dob: 11/23/2010),

                A Minor Child.

MARVIN JORDAN,

                Appellant,

                v.

STATE OF WASHINGTON,
DEPARTMENT OF CHILDREN,
YOUTH, AND FAMILIES,

                Respondent.

No. 79125-7-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 18, 2019

MANN, A.C.J. — Marvin Jordan appeals an order terminating his parental rights to A.B. He claims that substantial evidence does not support the trial court's finding that all necessary services capable of remedying his parental deficiencies were offered or provided, that continuation of the parent-child relationship diminished A.B.'s prospects for integration into a stable and permanent home, and that he is currently unfit to parent A.B. We disagree and affirm the termination order.

I.

A.B. was born on November 23, 2010, in Oklahoma. Jordan, A.B.'s father, has lived his entire life in Oklahoma. He has only met A.B. once, in 2011, when A.B. was about a year old and "still in diapers." Shortly thereafter, A.B.'s mother moved with A.B. to Washington and ceased all contact with Jordan.

In July 2016, the Department of Children, Youth, and Families (Department) removed A.B. from the mother's care because the mother had difficulties managing A.B.'s Type I diabetes.[1] A.B. never returned to the mother's care.[2]

In December 2016, the trial court entered dependency and disposition orders, by default, as to Jordan because his whereabouts were unknown and the Department was unable to locate him. The dispositional order required Jordan to come forward, establish paternity, and contact the Department to be assessed for services and visitation. No other services were ever ordered.

In January 2017, Department social worker Virginia Whalen located Jordan in custody of the Tulsa County jail in Oklahoma. On January 24, Whalen sent Jordan a service letter, addressed to the Tulsa County jail, instructing him to screen for an attorney, contact the Department, and establish paternity through the King County Prosecutor's Office. Whalen was unable to establish phone contact with Jordan before he was moved to the North Fork Correctional Facility in Oklahoma.

Between January 2017 and May 2018, Whalen sent Jordan 15 letters referring him to the King County Prosecutor for paternity testing and apprising him of A.B.'s

_____

[1] A.B. has Type I diabetes that requires monitoring multiple times a day. A.B. "needs skilled caregivers who have a nuanced understanding to make discrete and educated decisions concerning the administrating" of A.B.'s insulin.
[2] A.B.'s mother voluntarily relinquished her parental rights and is not a party to this appeal.

developments and medical condition. Once Jordan established contact with the Department, he spoke with Whalen three to four times on the phone and wrote several letters to Whalen and A.B.

In April 2018, in an Oklahoma state court, Jordan pleaded guilty to possession of a firearm (after already being convicted of a felony) and to "unlawful possession of controlled drug." He was sentenced to serve five years in the custody of the Oklahoma Department of Corrections. Later that month, Jordan obtained results of a paternity test, with the help of his attorney, proving that he is A.B.'s biological father.

The three-day termination trial took place in August 2018. Jordan, Whalen, A.B.'s court-appointed special advocate (CASA), and Jordan's Oklahoma Department of Corrections case manager testified. Jordan testified telephonically that he has been incarcerated in Oklahoma since January 2017, and residing at the Cimarron Correctional Facility since September 2017. He testified to his desire of being A.B.'s father, educating himself about Type I diabetes, and being willing to relocate to Washington to parent A.B. Jordan admitted that he was not paying child support for A.B. and that A.B. would not be able to recognize him while walking down the street.

According to Jordan's case manager at the Cimarron Correctional Facility, Jordan took the initiative to participate in a cognitive behavioral change course and was working toward obtaining his GED[3]. The case manager testified that Jordan had "564 days" left to serve on his prison sentence but could be released in "5.22 months." The case manager also explained that Jordan was required to serve nine to twelve months of "post-imprisonment supervision."

---

[3] General equivalency degree (GED).

The CASA testified that A.B. had been in the dependency system for 25 months by that time and that A.B. was currently in a stable foster placement. According to the CASA, A.B. did not know Jordan and wanted to be adopted by the foster placement. The CASA supported termination.

Whalen testified to A.B. bonding with, and remaining in, the same foster placement since May 2017. She testified about the need to monitor A.B.'s diabetes multiple times a day. Whalen also testified about the numerous letters she sent Jordan and inquiring about the programs available to Jordan at the Cimarron Correctional Facility. Whalen recommended termination of Jordan's parental rights because it was unclear when he would be released from prison, A.B. did not have a relationship with him, and A.B. should not have to wait another 12 months for permanency.

After hearing the testimony, the trial court entered an order terminating Jordan's parental rights. Jordan appeals.

II.

Parental rights are a fundamental liberty interest protected by the United States Constitution. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). However, "the State has an equally compelling interest in protecting the physical, mental, and emotional health of the children." In re Dependency of H.W., 70 Wn. App. 552, 555, 854 P.2d 1100 (1993) (citing In re Sego, 82 Wn.2d 736, 738, 513 P.2d 831 (1973)). To terminate a parent's rights, the Department must first establish and prove the following six elements by clear, cogent, and convincing evidence[4]:

(a) That the child has been found to be a dependent child;

---

[4] "Clear, cogent, and convincing" means highly probable. In re Welfare of M.R.H., 145 Wn. App. 10, 24, 188 P.3d 510 (2008).

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . and

(f) That the continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.

RCW 13.34.180(1).[5]

Next, due process requires the trial court to expressly or impliedly find by clear, cogent, and convincing evidence that the parent is currently unfit. In re Welfare of A.B., 168 Wn.2d 908, 918-19, 232 P.3d 1104 (2010). If all of these elements are proven, the trial court must also find by a preponderance of the evidence that termination is in the "best interests" of the child. RCW 13.34.190(1).

---

[5] Jordan does not argue that the Department failed to satisfy its burden under RCW 13.34.180(1)(a)-(c).

If "substantial evidence"[6] supports the trial court's findings, we must affirm the termination order. In re Dependency of T.R., 108 Wn. App. 149, 161, 29 P.3d 1275 (2001). On review, we do not make credibility determinations or reweigh the evidence. In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006). We accept unchallenged findings as true on appeal. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001). Whether a termination order satisfies statutory requirements is a question of law that we review de novo. In re Dependency of K.N.J., 171 Wn.2d 568, 574, 257 P.3d 522 (2011).

### III.

Jordan contends that there is insufficient evidence in the record to show that the Department provided him with all necessary and reasonably available services under RCW 13.34.180(1)(3), or made reasonable efforts to offer him services during his incarceration under RCW 13.34.136(2)(b)(i)(A).[7]

A service is "necessary" if it is "needed to address a condition that precludes reunification of the parent and child." In re Dependency of A.M.M., 182 Wn. App. 776, 793, 332 P.3d 500 (2014). A service is "reasonably available" if it is "available within the department, or within the community" or "the department has existing contracts to purchase" it. RCW 13.34.136(1)(b)(vii). Usually, when the Department orders remedial services, it has a statutory obligation, at a minimum, to provide the parent with a referral list of agencies or organizations that provide the services. In re Welfare of Hall, 99 Wn.2d 842, 850, 664 P.2d 1245 (1983). However, if a parent is unwilling or unable to

---

[6] "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." Bering v. SHARE, 106 Wn.2d 212, 220, 721 P.2d 918 (1986) (citing In re Snyder, 85 Wn.2d 182, 185-86, 532 P.2d 278 (1975)).

[7] This issue encompasses Jordan's challenge to findings of fact 2.14, 2.15, 2.17, and 2.31.

make use of available services, the Department is not obligated to offer other services. In re Dependency of Ramquist, 52 Wn. App. 854, 861, 765 P.2d 30 (1988). The Department is also not required to offer or provide services that would be futile. M.R.H., 145 Wn. App. at 25.

## A.

Jordan argues that the Department never offered him paternity testing. In December 2016, the court's dispositional order mandated Jordan to establish paternity. Then, after locating Jordan in an Oklahoma jail in January 2017, the Department sent Jordan more than a dozen letters over the course of a year instructing him to contact the King County Prosecutor's Office for paternity testing. Although Jordan testified that he did not begin receiving the Department's letters until late September 2017, the record does not contain any evidence showing that Jordan ever attempted to contact the King County Prosecutor's Office. The Department was not required to do more under the circumstances.[8] Substantial evidence supports the finding that the Department offered or provided all necessary and reasonably available services capable of correcting Jordan's parental deficiencies in the foreseeable future.

Even if we were to decide that the Department failed to provide necessary services to Jordan, termination is still appropriate if the services would not have remedied his deficiencies in the foreseeable future.[9] T.R., 108 Wn. App. at 164. The

---

[8] Although Jordan argues that the Department knew he would not be able to complete his paternity testing through the prosecutor's office (due to the prosecutor's office lack of jurisdiction over him), the argument is misplaced. Whether the prosecutor's office assisted Jordan with paternity testing or not, the fact remains that Jordan failed to avail himself of that service. Ramquist, 52 Wn. App. at 861 (an "unwillingness or inability to make use of the services provided excuses the [Department] from offering extra services that might have been helpful").

[9] Here, the trial court identified Jordan's parental deficiencies as his lack of availability to parent, pattern of incarceration, history of drug offenses, and lack of any relationship or bond with A.B.

foreseeable future varies with the child's age. T.R., 108 Wn. App. at 164. For young children, the foreseeable future may mean a matter of months. See Hall, 99 Wn.2d at 850-51 (finding eight months not in foreseeable future of 4-year-old). "Although 1 year may not be a long time for an adult decision maker, for a young child it may seem like forever." In re Dependency of A.W., 53 Wn. App. 22, 32, 765 P.2d 307 (1988).

Here, substantial evidence supports a determination that provision of services would have been futile. Even with services, Jordan, as of the trial, would remain in prison between 5 and 18 months. Upon release, Jordan would be required to undergo between 9 and 12 months of "post-imprisonment supervision" in Oklahoma. At trial, A.B. was seven years old and had not seen Jordan for six years. A.B. did not know Jordan and was bonding with foster parents. From A.B.'s perspective, an additional 14 to 30 more months to reunite with Jordan is not in the foreseeable future.

B.

Jordan next argues that the Department failed to make reasonable efforts to provide him services during his incarceration as required by RCW 13.34.180(1)(d) and RCW 13.34.136(2)(b)(i)(A).[10]

The focus of RCW 13.34.136(2)(b)(i)(A) is on providing services "available at the facility where the parent is confined." Thus, the Department's duty was to make reasonable efforts to refer Jordan to services available in the Cimarron Correctional Facility in Oklahoma. In re Dependency of D.L.B., 186 Wn.2d 103, 123, 376 P.3d 1099 (2016) (the Department's duty is to prove all services that are reasonably available in the facility where the parent is confined). Here, Whalen testified that, as of December

---

[10] RCW 13.34.136(2)(b)(i)(A) provides in part: "if the parent is incarcerated," the permanency plan must "include treatment that reflects the resources available at the facility where the parent is confined."

2017, the Cimarron Correctional Facility only offered two programs: anger management classes and substance abuse classes. The trial court's unchallenged finding establishes that Whalen "has encouraged the father to participate in any services that are available to him." The Department fulfilled its duty.

C.

For the first time on appeal, Jordan suggests that the Department should have offered or provided him with parenting or chemical dependency assessment services. A review of the record shows that Jordan did not raise this issue before the trial court.

Generally, we will not consider issues raised for the first time on appeal. However, a "party may raise for the first time on appeal a manifest error affecting a constitutional right."[11] In re Adoption of M.S.M.-P., 181 Wn. App. 301, 312, 325 P.3d 392 (2014) (citing RAP 2.5(a)(3)). The appellant has the burden of demonstrating the basis for reviewing an issue for the first time on appeal. State v. Grimes, 165 Wn. App. 172, 185-86, 267 P.3d 454 (2011). Here, Jordan fails to address RAP 2.5(a) and offers no basis for reviewing his claim regarding parental and chemical dependency assessments for the first time on appeal. He has not met his burden.

IV.

Jordan next claims that the Department failed to establish, pursuant to RCW 13.34.180(1)(f), that "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home" because

---

[11] "A manifest error requires a showing of actual prejudice." M.S.M.-P., 181 Wn. App. at 312. Actual prejudice requires a "plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case." State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

the trial court failed to properly consider the additional statutory factors relevant to incarcerated parents.[12]

### A.

The trial court found that A.B. "is adoptable and has prospects for adoption." Further, the trial court found A.B. "is bonded to a home other than that of [A.B.'s] biological parents. [A.B.] cannot be adopted while parental rights remain intact." Because Jordan does not challenge this finding, we accept it as true and conclude that the Department has satisfied the initial requirement of RCW 13.34.180(1)(f).

### B.

Additionally, if a parent is incarcerated, "RCW 13.34.180(1)(f) requires a trial court to consider whether (1) a parent maintains a meaningful role in the child's life, (2) the department made reasonable efforts, and (3) particular barriers of incarceration existed." In re Parental Rights to K.J.B., 187 Wn.2d 592, 604, 387 P.3d 1072 (2017) (holding that "findings are not required when the statute requires only that the factor be considered."). Consideration of the incarceration factors under RCW 13.34.180(f) means "'a weighing or balancing of facts, along with a resolution of that weighing.'" K.J.B., 187 Wn.2d at 603 (quoting In re Parental Rights to M.J., 187 Wn. App. 399, 309, 348 P.3d 1265 (2015)).

Here, the record clearly establishes that the trial court explicitly addressed and considered the incarceration factors in RCW 13.34.180(1)(f):

> 2.31    The Court has assessed additional considerations afforded incarcerated parents by RCW 13.34.180(1)(f). Mr. Jordan does not have a meaningful role in [A.B.'s] life. He has no role in her life. [The Department] has made reasonable efforts to both locate Mr. Jordan and attempt to engage him in [A.B.'s] life.

---

[12] This claim addresses Jordan's challenge to findings of fact 2.28 and 2.31.

In determining whether substantial evidence supports the trial court's findings, this court does not weigh the evidence or the credibility of witnesses. In re Dependency of E.L.F., 117 Wn. App. 241, 245, 70 P.3d 163 (2003). And, although Jordan disagrees with the trial court's conclusion as to the incarceration factors, we may not reverse the trial court for those reasons because RCW 13.34.180(1)(f) only requires consideration of the factors not any particular outcome. K.J.B., 187 Wn.2d at 603-04.

V.

Next, Jordan argues that there is insufficient evidence in the record to show that the Department proved there was little likelihood that conditions would be remedied so that A.B. would be returned to him in the near future.[13]

The concern of RCW 13.34.180(1)(e) is whether a parent has corrected their parental deficiencies. T.R., 108 Wn. App. at 165. Even when evidence suggests that the parent may eventually correct parental deficiencies, termination is still appropriate when deficiencies will not be corrected within the foreseeable future. A.W., 53 Wn. App. at 32. The Department need not give a parent an unlimited time to become a fit parent. T.R., 108 Wn. App. at 167. When it is eventually possible, but not imminent, for a parent to be reunited with a child, the child's present need for stability and permanence is more important and can justify termination. T.R., 108 Wn. App. at 166. "A determination of what constitutes the near future depends on the age of the child and the circumstances of the placement." In re Dependency of T.L.G., 126 Wn. App. 181, 204, 108 P.3d 156 (2005).

---

[13] This argument encompasses Jordan's challenge to findings of fact 2.18, 2.20, 2.24, 2.26, 2.30, and 2.34.

Substantial evidence in the record supports the trial court's finding that there is little likelihood that conditions will be remedied such that A.B. can be reunited with Jordan in the near future. Whalen testified that even when Jordan is released the Department would require Jordan to undergo a parental assessment, maintain three to six months of "stability in his life," and show the ability to manage A.B.'s medical conditions. Whalen estimated that Jordan would need at least a year post release to remedy his parental deficiencies. A.B.'s CASA also testified that, upon release, Jordan would need to be assessed and complete any treatment recommendations. Given the 12 months Jordan would need from the date of his eventual release to be able to parent A.B., there was no likelihood that conditions would be remedied in A.B.'s near future.

## VI.

Finally, Jordan contends that insufficient evidence supports the trial court's finding that he was an unfit parent.[14]

In order to meet its burden to prove current unfitness, the Department is required to prove that Jordan's parenting deficiencies prevent him from providing A.B. with "basic nurture, health, or safety" by clear, cogent, and convincing evidence. In re Welfare of A.B., 181 Wn. App. 45, 61, 323 P.3d 1062 (2014) (citing RCW 13.34.020).

Here, substantial evidence supports the finding that Jordan is currently unfit to parent A.B. At the time of trial, Jordan was not available to parent A.B. and would not be in the position to parent A.B. for at least another year. Additionally, Jordan testified that he has lived his entire life in Oklahoma, only seen A.B. once when A.B. was a year old, never paid child support for A.B., and did not know how to manage A.B.'s Type 1

---

[14] This claim involves Jordan's challenge to findings of fact 2.18, 2.19, 2.22, and 2.34.

diabetes. He also testified A.B. would not be able to recognize him. Both Whalen and A.B.'s CASA testified that A.B. did not know Jordan and that A.B.'s medical condition required continual monitoring and detailed management. Based on the evidence presented, the Department met its burden of proof to establish this factor.

VII.

The record supports the trial court's determination that the elements required for a termination are satisfied. We affirm the termination of Jordan's parental rights to A.B.

_Mann, ACJ_

WE CONCUR: